UNITED STATES of America,

v.

Paul HAGERMAN, Defendant.

Criminal Case No. 5:10–CR–0462 (GTS).

United States District Court,
N.D. New York.

Nov. 30, 2011.

104

mara Thomson, Esq., Geoffrey J.L. Brown, Esq., Assistant United States Attorneys, Syracuse, NY, for the Government.

Lisa A. Peebles, Acting Federal Public Defender for the N.D.N.Y., Of counsel: Gene V. Primomo, Esq., Assistant Federal Public Defender, Syracuse, NY, for Defendant.

### MEMORANDUM–DECISION and ORDER

GLENN T. SUDDABY, District Judge.

On August 17, 2011, the Court sentenced Paul Hagerman ("Defendant") following his conviction for violating 18 U.S.C. §§ 2252A(a)(2)(A), and 18 U.S.C. §§ 2252A(a)(5)(B) (receiving and possessing child pornography). Before sentencing, the Government requested that the Court order Defendant to pay restitution to his crime's "victim" pursuant to 18 U.S.C. § 2259. During sentencing, the Court reserved decision on the issue of restitution, and indicated that it would decide the issue (including whether or not to hold an evidentiary hearing on restitution) in the future. This is the Court's decision on the issue of restitution.

### TABLE OF CONTENTS

I. RELEVANT BACKGROUND ............................................... 105
 A. Government's Request for Restitution ................................. 105
 B. Governing Statute ................................................ 107

II. ANALYSIS ........................................................... 107
 A. Whether the Court Must Hold an Evidentiary Hearing Before Deciding the Government's Request for Restitution, Under the Circumstances ..................................................... 107
 B. Whether Vicky Is a "Victim" of Defendant's Crime, Within the Meaning of 18 U.S.C. § 2259(c) ........................................ 109
 C. Whether 18 U.S.C. § 2259 Limits the Losses that Vicky May Recover Pursuant to 18 U.S.C. § 2259(b)(3)(A)-(E) to Those *Proximately* Caused by Defendant's Commission of the Crime in Question ........... 111
 D. The Amount of Vicky's Losses that Were Proximately Caused by Defendant's Commission of the Crime in Question ..................... 117
 1. Future Counseling Expenses ...................................... 124
 2. Educational and Vocational Counseling Needs ..................... 124
 3. Lost Wages and Benefits ........................................ 125
 4. Attorney's Fees and Out–of–Pocket Expenses ..................... 125
 5. Offset of Total Amount by Amounts Already Paid ................. 126
 E. Whether It Is Permissible, and Appropriate, Under 18 U.S.C. § 2259, for the Court to Hold Defendant Jointly and Severally Liable for Payment of the Full Amount of Restitution ........................... 126

## I. RELEVANT BACKGROUND

### A. Government's Request for Restitution

On March 14, 2011, Defendant was adjudged guilty of committing a crime under Chapter 110 of Title 18 of the United States Code. (Text Minute Entry dated March 14, 2011.) More specifically, Defendant pleaded guilty to the following two crimes: (1) violation of 18 U.S.C. §§ 2252A(a)(2)(A) by receiving child pornography "[f]rom on or about 2009 to July 2010"; and (2) violation of 18 U.S.C. §§ 2252A(a)(5)(B) by possessing child pornography "[o]n or about August 13, 2010." (Dkt. No. 1, at 1–2 [Indictment]; Dkt. No. 37, at 7–8, 15 [attaching transcript of change-of-plea proceeding held on March 14, 2011].)

In May and June of 2011, the Government provided both the United States Probation Office and Defendant written documents detailing the losses that it asserted were subject to restitution under 18 U.S.C. § 2259. (*See, e.g.,* Dkt. No. 21, at 5 [attaching ¶¶ 12, 13 of Presentence Report].) Among these written documents was a letter, dated June 21, 2011, from an attorney requesting that Defendant be made to pay restitution to his crime's "victim" (and her client), identified as Vicky,[1] in the amount of $975,917.64 (nine hundred seventy-five thousand, nine hundred seventeen dollars and sixty-four cents), pursuant to 18 U.S.C. § 2259. (Dkt. No. 22, at 1.)

The letter from Vicky's representative attached 12 exhibits in support of her request. (*Id.*) Among those 12 exhibits were the following documents: (1) a Victim Impact Statement and Letter to the Judge verified by Vicky on June 12, 2010; (2) a verified Victim Impact Statement by Vicky's mother dated October 1, 2010; (3) a verified Victim Impact Statement by Vicky's step-father dated October 1, 2010; (4) a verified written report, dated May 22, 2009, of a forensic psychological evaluation of Vicky, performed on April 10, 2009; (5) a verified written report, dated December 2, 2009, of a forensic psychological evaluation of Vicky, performed on November 6, 2009; (6) a verified written report, dated July 5, 2010, of a forensic psychological evaluation of Vicky, performed on May 29, 2010; (7) a transcript of a hearing, held on December 22, 2009, in which Vicky's forensic psychologist testified regarding his evaluation of her; (8) a verified vocational assessment of Vicky dated March 10, 2010; and (9) a forensic economic analysis of Vicky's lost wages dated November 10, 2010.

On June 23, 2011, the United States Probation Office issued the initial version of its Presentence Report, which attached, *inter alia*, the above-described Letter to the Judge and three Victim Impact Statements. (Dkt. No. 21, at 26–35.)

On July 22, 2011, Defendant opposed that request in writing, asked that the Court hold an evidentiary hearing to resolve asserted factual issues regarding restitution, and asked that "the restitution portion of the judgment be continued" so that "the sentencing [may] proceed as soon a[s] possible." (Dkt. Nos. 22, 23.) On August 3, 2011, the Government joined in the written restitution request made by Vicky's representative. (Dkt. No. 26, at 2–9.)

On August 17, 2011, the Court sentenced Defendant. (Text Minute Entry dated August 17, 2011.) At the time, the Court indicated that, while restitution appeared to be mandatory under the circumstances, the amount of such restitution was far from clear. (Dkt. No. 38, 4–5 [attaching transcript of sentencing proceeding held on August 17, 2011].) As a result, the Court reserved decision on the issue of restitution, and indicated that it would decide the issue within 90 days. (*Id.* at 5.)[2] On November 14, 2011, the Court extended the deadline for its decision until December 1, 2011. (Text Order filed Nov. 14,

---

**1.** "Vicky" is the pseudonym of one of the individuals depicted in the materials possessed by Defendant; this pseudonym is used in order to protect the true identity of the victim, a minor child. N.D.N.Y. L.R. Cr. P. 1.3 (requiring protection of the identities of the true names of minor children); *see also U.S. v. Pearson,* 570 F.3d 480, 482 (2d Cir.

2009) (referring to minor female victims of child pornography crime as "Jane Doe # 1" and "Jane Doe # 2").

**2.** The Court notes that, at the time, the Court left open the possibility that an evidentiary hearing would not be necessary. (Dkt. No. 38, at 5.)

2011.) As stated above, this is the Court's decision.

Because this Decision and Order is intended primarily for the review of the parties (who have demonstrated an adequate understanding of the issues raised by the Government's request), the Court need not, and will not, recite in detail the parties' arguments on the Government's request. (*See generally* Dkt. No. 22 [Def.'s Memo. of Law]; Dkt. No. 26 [Government's Memo. of Law].)

Rather, the Court will note only that, at their core, the parties' briefs raise the following five issues: (1) under the circumstances, must the Court hold an evidentiary hearing before deciding the Government's request for restitution; (2) was Vicky a "victim" of Defendant's crime within the meaning of 18 U.S.C. § 2259; (3) does 18 U.S.C. § 2259 limit the losses that Vicky may recover pursuant to 18 U.S.C. § 2259(b)(3)(A)-(E) to those *proximately* caused by Defendant's commission of the crime in question (or does it permit some other sort of causation, such as factual causation); (4) applying the correct standard of causation, what amount of Vicky's losses were caused by Defendant's commission of the crime in question; and (5) is it permissible, and appropriate, under 18 U.S.C. § 2259, for the Court to hold Defendant jointly and severally liable for payment of the full amount of restitution (rather than apportioning liability among the individuals to reflect the level of contribution to Vicky's loss and economic circumstances of each individual)?

The Government bears the burden of proof on each of these five issues by a preponderance of the evidence. 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government.").

## B. Governing Statute

Section 2259 of Title 18 of the United States Code defines the individual harmed "as a result" of a defendant's crime committed under Chapter 110 of the United States Code as the crime's "victim." 18 U.S.C. § 2259(c). Section 2259 further mandates that the Court issue an Order directing the defendant to pay that victim restitution equaling "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). Section 2259 defines "the full amount of the victim's losses" as "any costs incurred by the victim" for the following:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3).

## II. ANALYSIS

### A. Whether the Court Must Hold an Evidentiary Hearing Before Deciding the Government's Request for Restitution, Under the Circumstances

 After carefully considering the issue, the Court finds that, under the circumstances, an evidentiary hearing is not necessary before restitution may be ordered. The Court makes this finding for two reasons.

First, when Congress amended 18 U.S.C. § 2259 in 1996, it clearly explained

that, in some circumstances, the procedure for issuing restitution need not involve an evidentiary hearing. More specifically, pursuant to this amendment, "[a]n order of restitution under [18 U.S.C. § 2259] shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." 18 U.S.C. § 2259(b)(2). According to the manner in which an order of restitution is issued under 18 U.S.C. § 3664, when the victim's losses are ascertainable at least ten days before the sentencing, and copies of the documents supporting the victim's losses are provided to Defendant within this time frame, the Court may decide restitution at sentencing.

This is because, under 18 U.S.C. § 3664, the sentencing court

shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

18 U.S.C. § 3664(a). The court is required to disclose this report to the defendants and the government. 18 U.S.C. § 3664(b). To facilitate the preparation of this report, the government, upon request of the probation officer, is required to consult with victims and, not later than sixty days before the sentencing date, detail any losses subject to restitution. 18 U.S.C. § 3664(d)(1). Before submitting a report to the court, the probation officer shall, to the extent practicable, provide notice of the court proceedings to all victims and afford them the opportunity to submit an affidavit detailing any losses subject to restitution. 18 U.S.C. § 3664(d)(2). "After reviewing the report of the probation officer, the court *may* require additional documentation or hear testimony." 18 U.S.C. § 3664(d)(4) (emphasis added).[3] If the losses of victims are not ascertainable by ten days before sentencing, the United States Attorney or the probation officer "shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). Simply stated, the issue of restitution may, in appropriate circumstances, be decided by the Court based on the probation officer's presentence report, and need not be decided based on an evidentiary hearing.

This interpretation of 18 U.S.C. § 3664 is further supported by the fact that the statute also expressly states that "[t]he provisions of this chapter, chapter 227, and Rule 32(c) of the Federal Rules of Criminal Procedure shall be the only rules applicable to proceedings under this section." 18 U.S.C. § 3664(c). Rule 32, in turn, provides that "[t]he court *may* permit the parties to introduce evidence on the [parties'] objections [to the probation officer's presentence report]." Fed.R.Crim.P. 32(i)(2) [emphasis added]. Rule 32 does not provide that the court "must" permit the parties to introduce evidence on those objections. *Id.*; *accord, U.S. v. Pugliese,*

---

3. *See also U.S. v. Vandeberg*, 201 F.3d 805, 813 (6th Cir.2000) (noting that, "[w]hile ... in many cases[ ] a sentencing court will want to conduct a hearing to obtain relevant evidence and afford the parties an opportunity to present oral argument, ... § 3664(d)(5) does not mandate that such an evidentiary hearing must be conducted").

805 F.2d 1117, 1123 (2d Cir.1986) ("[Defendants] had no right to a mandatory evidentiary sentencing hearing.").

This interpretation of 18 U.S.C. § 3664 is further supported by the fact that, when Congress amended 18 U.S.C. § 2259 in 1996 (as part of enacting the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A), the Committee on the Judiciary explained as follows:

> This section also provides that the provisions of rule 32(c) of the Federal Rules of Criminal Procedure and of chapters 227 and 232 of title 18 shall be the only rules applicable to proceedings relating to the issuance of a restitution order. This provision is intended by the committee to clarify that the issuance of a restitution order is an integral part of the sentencing process that is to be governed by the same, but no greater, procedural protections as the rest of the sentencing process.

> The committee is concerned that without this clarification, the restitution phase of the sentencing process *could devolve into a full-scale evidentiary hearing.*

S.Rep. No. 104–179, at 20–21 (1996), *reprinted* in 1996 U.S.C.C.A.N. 924, 933 [emphasis added].

■ Second, under the circumstances of this case, the requirements for issuing a restitution order under 18 U.S.C. § 2259 without holding an evidentiary hearing have been satisfied. This is because Vicky's losses were ascertainable at least ten days before the sentencing, and copies of the documents supporting the victim's losses were provided to Defendant within this time frame. It is worth noting that, while a criminal defendant is afforded some due process protections during sentencing by Fed.R.Crim.P. 32 (whose provisions are made applicable by 18 U.S.C. § 3364), he has no right (during sentenc-

ing) to cross-examine his victim regarding his or her psychological injury, or to obtain an order directing his victim to undergo an examination by a mental health professional. *U.S. v. Morrison,* 153 F.3d 34, 54 (2d Cir.1998). This is especially true here, because 18 U.S.C. § 3664 expressly provides that "[n]o victim shall be required to participate in any phase of a restitution order." 18 U.S.C. § 3664(g)(1). It is also worth noting that Defendant's objection to the presentence report is not supported by any evidence creating a genuine dispute of material fact. *U.S. v. Mueller,* 902 F.2d 336, 347 (5th Cir.1990) ("No testimony or evidence presented by Mueller created any dispute over facts material to his sentence that the court could not resolve without a full evidentiary hearing. Thus, it was within the court's discretion to deny the evidentiary hearing.").

**B. Whether Vicky Is a "Victim" of Defendant's Crime, Within the Meaning of 18 U.S.C. § 2259(c)**

■ After carefully considering the issue, the Court finds that Vicky was a "victim" of Defendant's crime within the meaning of 18 U.S.C. § 2259(c). This is because Vicky was "harmed," under 18 U.S.C. § 2259(c), "as a result of" Defendant's receipt and/or possession of images of her sexual abuse as a minor over the Internet.

More specifically, the Court makes this finding because the Government has proved, by a preponderance of the evidence, that (1) Defendant received pornographic images of Vicky from the Internet "[f]rom on or about 2009 to July 2010," and that he possessed such pornographic images of her "[o]n or about August 13, 2010," and (2) Vicky has sustained, and continues to sustain, significant psychological damage as a result of her knowledge that unidentified individuals have down-

loaded pornographic images of her from the Internet on unidentified occasions, including (but not limited to) occasions between April 10, 2009, and August 14, 2010.

In addition, the Court makes this finding for the reasons stated by the Eleventh Circuit in *U.S. v. McDaniel*, a case involving the same victim as involved in the current case:

> Like the producers and distributors of child pornography, the possessors of child pornography victimize the children depicted within. The end users of child pornography enable and support the continued production of child pornography. They provide the economic incentive for the creation and distribution of the pornography, and the end users violate the child's privacy by possessing their image. All of these harms stem directly from an individual's possession of child abuse images.

*U.S. v. McDaniel*, 631 F.3d 1204, 1208 (11th Cir.2011). As the Fifth Circuit had previously explained in *U.S. v. Norris*:

> The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions in at least three ways.
>
> *First*, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. The materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. . . . The consumer who 'merely' or 'passively' receives or possesses child pornography directly contributes to this continuing victimization.
>
> *Second*, the mere existence of child pornography represents an invasion of the privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child

victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent. . . . The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.

> *Third*, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials. . . . Plainly, Congress has described a chicken-and-egg scenario in which it would be impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry. The underlying point, however, is that there is no sense in distinguishing . . . between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

*U.S. v. Norris*, 159 F.3d 926, 929–30 (5th Cir.1998) (internal quotation marks and citations omitted; emphasis in original).

The Court notes that the United States Supreme Court has recognized that the distribution of child pornography is "intrinsically related to the sexual abuse of children" because, *inter alia*, "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber*, 458 U.S. 747, 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113

(1982). More specifically, the Supreme Court has recognized that, "[b]ecause the child's actions are reduced to a recording, the pornography may haunt [the child] in future years, long after the original misdeed took place." *Ferber*, 458 U.S. at 759 n. 10, 102 S.Ct. 3348 (internal quotation marks omitted).

## C. Whether 18 U.S.C. § 2259 Limits the Losses that Vicky May Recover Pursuant to 18 U.S.C. § 2259(b)(3)(A)-(E) to Those *Proximately* Caused by Defendant's Commission of the Crime in Question

■ After the parties' completed their briefing of this issue on August 3, 2011, the Second Circuit addressed the issue. More specifically, on September 8, 2011, the Second Circuit held, as a matter of first impression, that "under [18 U.S.C.] § 2259, a victim's losses must be proximately caused by the defendant's offense." *U.S. v. Aumais*, 656 F.3d 147, 154 (2d Cir.2011). The Court must faithfully apply the law as the Second Circuit has pronounced it. Before doing so, however, the undersigned finds it appropriate to respectfully discuss certain aspects of the Second Circuit's reasoning in *Aumais* regarding whether probable cause is required in 18 U.S.C. § 2259, in the event the Second Circuit has occasion to revisit the issue (as did the Fifth Circuit in *In re Amy Unknown*, 636 F.3d 190 [5th Cir.2011], when it reheard the mandamus petition denied in *In re Amy*, 591 F.3d 792 [5th Cir.2009]).

In *Aumais*, the Second Circuit offered three reasons for its conclusion that proximate cause is required by 18 U.S.C. § 2259: (1) its endorsement of the Eleventh Circuit's conclusion, in *U.S. v. McDaniel*, 631 F.3d 1204 (11th Cir.2011), that such a construction is required by a principle of statutory construction which states that, "[w]hen several words are followed by a clause that is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all"; (2) its endorsement of the D.C. Circuit's conclusion, in *U.S. v. Monzel*, 641 F.3d 528 (D.C.Cir.2011), that such a construction is required by the fact that, in enacting 18 U.S.C. § 2259, Congress failed to rebut a purported presumption that proximate cause is the form of causation intended in all statutes; and (3) its own conclusion that such a construction is required, or at least indicated, by the fact that 18 U.S.C. § 2259(b)(2) cross-references 18 U.S.C. § 3664 and 18 U.S.C. § 3663A, which both purportedly define "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."

With regard to the Eleventh Circuit's conclusion that such a construction is required by the principle of statutory construction in question (i.e., that, "[w]hen several words are followed by a clause that is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all"), by definition that principle does not apply where the clause is not applicable *as much to the first and other words as to the last*.[4] Here, the phrase in question ("as a proximate result of the offense") does not appear, to the undersigned, to be applicable as much to the losses listed in 18 U.S.C.

4. *Cf.* 2A N. Singer, *Sutherland on Statutory Construction* § 47.16 (7th ed. 2011) ("The rule [that, if the legislative intent or meaning of a statute is not clear, the meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases] will not be applied where there is no ambiguity....")

§ 2259(b)(3)(A)-(E) as to the loss listed in 18 U.S.C. § 2259(b)(3)(F) for two reasons.

First, each of the losses listed in 18 U.S.C. § 2259(b)(3)(A)-(F) are separated by semicolons, not commas. Of course, semicolons are used, *inter alia*, to "separate[ ]" the items in a series in a manner that creates a larger and clearer "break" between the items than is created through the use of commas.[5] In employing the principle of statutory construction in question, the Eleventh Circuit cited the Supreme Court's decision in *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920),

which cited its prior decision in *U.S. v. Standard Brewery*, 251 U.S. 210, 218, 40 S.Ct. 139, 64 L.Ed. 229 (1920), which in turn cited the English decision of *Great W. Ry. Co. v. Swindon and Cheltenham Extension Ry. Co.*, L.R. 9 App. Cas. 787, 808 (House of Lords 1884) (Bramwell, J.). In each of those three cases, the language at issue contained a clear ambiguity created by the use of commas, not semicolons.[6] The language at issue in this case, which uses semicolons, appears to create no such ambiguity, much less one offering *two equal interpretations* (a prerequisite for the application of the principle of statutory

---

**5.** *Chicago Manual of Style*, §§ 6.16, 6.19, 6.58 (Univ. of Chicago Press, 16th ed. 2010); *accord, Webster's New College Dictionary* 1027 (Houghton Mifflin Harcourt 3d ed. 2008) (defining "semicolon" as "[a] punctuation mark (;) indicating a degree of separation greater than the comma but less than the period"). While any of a dozen authorities could be cited for the grammatical meaning created by a semicolon, the Court has selected the *Chicago Manual of Style* and *Webster's* for that purpose, because they have been relied on by a federal court in specifically concluding that the qualifying language from one item in a group does not apply to another item in that group. *See Commercial Aluminum Cookware Co. v. U.S.*, 938 F.Supp. 875, 883 (Ct. Int'l Trade 1996) ("The crux of the dispute here is whether each listing of items in Heading 7010, HTSUS, separated by semicolons, constitutes a separate class of merchandise. Plaintiff contends they do and defendant argues otherwise. The Court finds plaintiff has the better argument for the following reasons.... Second, the semicolons dividing the classes of merchandise in Heading 7010, HTSUS, create a wall around each grouping of items preventing the qualifying language from one grouping from applying to another. This use of semicolons is consistent with grammatical rules on the principal use of the semicolon—to separate *independent* clauses of a sentence.") [emphasis added; citations omitted].

**6.** *See, e.g., Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S.Ct. 516, 64

L.Ed. 944 (1920) (addressing whether words "not domiciled in Porto Rico" referred only to noun "district of the United States" or also to nouns "citizens or subjects of a foreign state or states, or citizens of a state, territory" in the phrase "citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States not domiciled in Porto Rico"); *U.S. v. Standard Brewery*, 251 U.S. 210, 217–18, 40 S.Ct. 139, 64 L.Ed. 229 (1920) (addressing whether "other intoxicating" referred only to nouns "malt or vinous liquors" or also to nouns "beer" and wine," in following ambiguous independent clause: "no grains, cereals, fruit, or other food products are permitted to be used in the manufacture or production of beer, wine or other intoxicating malt or vinous liquors for beverage purposes"); *Great W. Ry. Co. v. Swindon and Cheltenham Extension Ry. Co.*, L.R. 9 App. Cas. 787, 808 (House of Lords 1884) (addressing whether words "of any tenure" applied only to noun "hereditaments" or also to nouns "messuages," "lands," and "tenements" in independent clause "the word 'lands' shall extend to messuages, lands, tenements, and hereditaments of any tenure"). It is also worth noting that, in *Great W. Ry. Co.*, Lord Bramwell gave an example of the principle in action, which · similarly involved an ambiguous use of commas: "For instance, 'horses, oxen, pigs, and sheep, from whatever country they may come,' the latter words would apply to horses as much as to sheep." *Great W. Ry. Co. v. Swindon and Cheltenham Extension Ry. Co.*, L.R. 9 App. Cas. 787, 808 (House of Lords 1884).

construction in question).[7]

■ Second, even setting aside the clear breaks created by the semicolons in 18 U.S.C. § 2259(b)(3)(A)-(F), construing the limiting phrase "as a proximate result of the offense" as modifying not only the noun "any other losses suffered by the victim" but also the nouns listed in 18 U.S.C. § 2259(b)(3)(A)-(E) would appear to violate the grammatical rule known as "the rule of the last antecedent."[8] According to that rule, "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). Notably, in *Barnhart*, the Supreme Court relied on "the rule of the last antecedent" in reversing a Third Circuit decision that erroneously held that "[w]hen a sentence sets out one or more specific items followed by 'any other' and a description, the specific items must fall within the description." *Barnhart*, 540 U.S. at 26, 124 S.Ct. 376. Rather, in *Barnhart*, the Supreme Court held that the words "which exists in the national economy" re-

ferred only to the noun "any other kind of substantial gainful work" (and not also to the noun "previous work") in the clause "only if . . . he is not only unable to do his previous work but cannot, . . . engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at 24–27, 124 S.Ct. 376. This finding— that the words "any other" do not create a "contrary intention" sufficient to overcome the rule of the last antecedent—appears particularly instructive here, where the statute at issue involves the use of the words "any other" in the last loss listed.

■ Turning to the D.C. Circuit's conclusion that in enacting 18 U.S.C. § 2259 Congress failed to rebut a purported presumption that proximate cause is the form of causation intended in all statutes, with all due respect, the undersigned can find no *presumption* of proximate cause recognized in the two Supreme Court cases cited by the D.C. Circuit—*U.S. v. Gypsum Co.*, 438 U.S. 422, 437, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), and *Morissette v. U.S.*, 342 U.S.

---

**7.** The Court notes that the interpretation promulgated by the Eleventh Circuit can lead to the arguably absurd result of finding that (1) a victim was "harmed as a result" of the defendant's crime, within the meaning of 18 U.S.C. § 2259(c), but (2) the victim did not "incur[ ]" any particular "losses" or "costs" as a result of the defendant's crime within the meaning of 18 U.S.C. § 2259(b)(3)(A)-(E). *See, e.g., U.S. v. Chow*, 760 F.Supp.2d 335, 338–343 (S.D.N.Y.2010) (finding no particular losses caused by defendant after acknowledging that "Defendant's possession of their images undeniably contributed to Amy and Vicky's harm"); *U.S. v. Kennedy*, 643 F.3d 1251, 1263 (9th Cir.2011) ("Even without evidence that Amy and Vicky knew about Kennedy's conduct, the district court could reasonably conclude that Amy and Vicky were 'harmed as a result of' Kennedy's participation in the audience of individuals who viewed the images. . . . [However, the] government has not . . . introduced any evidence establishing a

causal chain between Kennedy's conduct and the specific losses incurred by Amy and Vicky. . . . [T]he government introduced no evidence that Amy and Vicky were even aware of Kennedy's conduct."). Such interpretations are to be avoided. 2A N. Singer, *Sutherland on Statutory Construction* § 45.12 (7th ed. 2011) ("It has been called a golden rule of statutory interpretation that, when one of several possible interpretations produces an unreasonable result, that is a reason for rejecting that interpretation in favor of another which would produce a reasonable result."); *Hughey v. JMS Devel. Corp.*, 78 F.3d 1523, 1529 (11th Cir.1996) ("Congress is presumed not to have intended absurd . . . results.").

**8.** *See* 2A N. Singer, *Sutherland on Statutory Construction* § 47.33 (7th ed. 2011) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.").

246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952)—which regard *mens rea,* not proximate cause.[9] Granted, a common law principle may certainly serve as a valuable extrinsic aid when interpreting a statute—if the common law principle "pertain[s] to the subject with which [the] statute deals."[10] However, it is unclear to the undersigned how a common law principle that proximate causation is usually required in the determination of civil or criminal *liability* pertains to the subject of whether proximate causation is required during a determination of a criminal *sentence,* which occurs only after liability has been determined. Clearly, criminal statutes can require mere factual causation (instead of proximate causation).[11] This would appear to be especially so where the portion of the criminal statute in question regards merely a sentence, not liability (thus ameliorating due process concerns).[12] The need for a strong causal link appears even further lessened when the sentence is not punitive but remedial in nature.[13] As the Committee on the Judiciary specifically recognized when 18

9. The Court notes that two cases relied on by analogy by the D.C. Circuit—*Hemi Group, LLC v. City of New York,* — U.S. —, 130 S.Ct. 983, 989, 175 L.Ed.2d 943 (2010), and *Holmes v. Sec. Investor Protection Corp.,* 503 U.S. 258, 265–68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)—found that proximate cause was required by a statute (18 U.S.C. § 1964) that differed from 18 U.S.C. § 2259, because that statute, *inter alia,* (1) used the term "by reason of" (not the words "incurred by"), (2) did *not* use the words "proximate result" elsewhere in the statute so as to suggest that the omission of those words with regard to the term "by reason of" was intentional, (3) regarded, in pertinent part, *liability* (through the creation of a private right of action for injured persons), not the penalty of restitution, and (4) had a different legislative history, clearly demonstrating an intent to require proximate causation.

10. 2B N. Singer, *Sutherland on Statutory Construction* § 50.1 (7th ed. 2011) ("The antecedent common law *pertaining to the subject with which a statute deals* comprises part of its legal history. It may serve as a valuable extrinsic aid, along with all other component elements of the legal system at the time of the enactment, for guidance with interpretation.") [emphasis added].

11. *See, e.g., Wood v. Smith,* 09–CV–0026, 2011 WL 3739364, at *5 (W.D.Mich. July 8, 2011) ("We now turn to whether defendant's criminal act of fleeing and eluding resulted in the police officer's death. Clearly it did. The only causation required by the statutory language [of MCL 257.602a(5), which imposes criminal liability for fleeing and eluding in a motor vehicle, resulting in the death of another individual] is factual causation, not proximate causation."). For purposes of this Decision and Order, the Court will assume the reader's familiarity with the general difference between "factual causation" (also called "but-for causation") and "proximate causation" (also sometimes called "direct causation" or "legal causation"). *Black's Law Dictionary* at 250 (West 9th ed. 2009).

12. *See, e.g., U.S. v. Webb,* 655 F.3d 1238, 1256 (11th Cir.2011) ("[T]he *results [in death]* language in . . . [18 U.S.C. § 1347(a), which imposes an enhanced penalty for death resulting from healthcare fraud] requires nothing more than a causal connection factually. The lack of foreseeability or proximate cause language in § 1347(a) is telling because Congress has included such language in numerous other criminal statutes, including statutes where the required connection is between the defendant's offense conduct and death or bodily injury.") [emphasis added].

13. For example, the sentence of civil forfeiture of property (which is also remedial in nature) may be imposed on an individual even where the individual did not know or agree that the property would be used to commit a crime. *See Bennis v. Michigan,* 516 U.S. 442, 443–53, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (affirming appellate court's affirmance of trial court's imposition of sentence of civil forfeiture of wife's interest in car owned jointly with husband who used it to commit crime of gross indecency to engage in sexual activity with prostitute, even though wife did not know or agree that husband would use car to commit that crime). This "knowledge or

U.S.C. § 2259 was amended in 1996, the sentencing phase of a criminal trial does not involve the same standard as does the guilt-determination phase of a criminal trial:

> This section also provides that the provisions of rule 32(c) of the Federal Rules of Criminal Procedure and of chapters 227 and 232 of title 18 shall be the only rules applicable to proceedings relating to the issuance of a restitution order. This provision is intended by the committee to clarify that the issuance of a restitution order is an integral part of the sentencing process that is to be governed by the same, but no greater, procedural protections as the rest of the sentencing process.
>
> The committee is concerned that without this clarification, the restitution phase of the sentencing process could devolve into a full-scale evidentiary hearing. The committee believes that such a development would be contrary to the interests of the swift administration of justice.

The committee believes that this provision fully comports with the requirements of the due process clause of the fifth amendment. *Although the sentencing phase of a criminal trial is subject to due process requirements, it does not require the same degree of protection as does the guilt determination phase.* The sole due process interest of the defendant being protected during the sentencing phase is the right not to be sentenced on the basis of invalid premises or inaccurate information.

S.Rep. No. 104–179, at 20–21 (1996), *reprinted* in 1996 U.S.C.C.A.N. 924, 933. Here, because the sentence in question in this case (criminal restitution) is remedial in nature (with the recognized goal of restoring a victim to her prior state of well being),[14] the sentence would not appear to have a goal of punishing a criminal defendant for harm that he *proximately* caused.

In any event, even if such a presumption of proximate causation exists, it would appear that Congress has, in fact, indicated an intent to rebut that presumption. The Second Circuit has recognized that the

---

agreement" requirement, which was dispensed with in *Bennis*, is analogous to the reasonable-foreseeability requirement that is typically present in a proximate causation analysis.

14. *See U.S. v. Battista*, 575 F.3d 226, 229 (2d Cir.2009) ("The goal of restitution, in the criminal context, is to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury.... In the context of the [Mandatory Victims Restitution Act], we have observed that the statutory focus" is "on the victim's loss and upon making victims whole.") [internal quotation marks and citations omitted]; *U.S. v. Amato*, 540 F.3d 153, 156–57 (2d Cir.2008) ("In the criminal law, victims' rights are generally the focus of restitution provisions, including those contained in the [Mandatory Victims Restitution Act].... Its purpose is primarily to restore the victim to his or her prior state of well-being, and to that end to require federal criminal defendants to pay full restitution to the identifiable victims of their crimes.") [internal quotation marks and citations omitted]; *U.S. v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006) ("[T]he purpose of restitution is essentially compensatory: to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury.... Because the [Mandatory Victims Restitution Act] mandates that restitution be ordered to crime victims for the 'full amount' of losses caused by a defendant's criminal conduct, ... it can fairly be said that the primary and overarching purpose of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.") [internal quotation marks and citations omitted]; *U.S. v. Coriaty*, 300 F.3d 244, 253 (2d Cir.2002) ("[T]he statutory focus [of the Mandatory Victims Restitution Act is] on the victim's loss and upon making victims whole....").

"intent and purpose" of the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A—which included 18 U.S.C. § 2259—was "to expand, rather than limit, the restitution remedy." *U.S. v. Ekanem,* 383 F.3d 40, 44 (2d Cir.2004); *see also* S.Rep. No. 104–179, at 22–23 (1996), *reprinted* in 1996 U.S.C.C.A.N. 924, 933. Moreover, Congress omitted any mention of "proximate causation" from 18 U.S.C. § 2259(b)(3)(A)-(E).

Finally, with regard to the fact that 18 U.S.C. § 2259(b)(2) cross-references 18 U.S.C. § 3664 and 18 U.S.C. § 3663A, which purportedly both define "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered," three problems appear to exist with relying on the cross-reference in question to support a conclusion that proximate causation is required by 18 U.S.C. § 2259(b)(3)(A)-(E).

First, the cross-reference in question does not regard the definition of a victim, but merely the manner of issuance and enforcement of a restitution order. For example, the cross-reference occurs in 18 U.S.C. § 2259(b)(2), labeled "Enforcement," not 18 U.S.C. § 2259(c), labeled "Definition." Indeed, 18 U.S.C. § 2259(b)(2) does not even cross-reference the portion of the Victim and Witness Protection Act of 1982 that regards victim's losses (i.e., 18 U.S.C. § 3663)—rather, it cross-references 18 U.S.C. § 3664, which regards the manner of issuance and enforcement of a restitution order. Even if the cross-reference could somehow be construed as regarding the definition of a victim, the definition of a victim is not the issue at hand; the issue at hand is what losses may such a victim recover. That issue is addressed in 18 U.S.C. § 2259(b)(3)(A)-(F), which nowhere references 18 U.S.C. § 3664 and 18 U.S.C. § 3663A.

Second, in any event, 18 U.S.C. § 2259 begins by stating, "*Notwithstanding section 3663 or 3663A,* and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter." 18 U.S.C. § 2259(a) [emphasis added]. By requiring a court to order restitution for any offense under the chapter despite whatever restitution is or is not required by 18 U.S.C. § 3663 and/or 18 U.S.C. § 3663A, 18 U.S.C. § 2259 would appear to have freed itself of the proximate cause requirement contained in certain paragraphs of 18 U.S.C. § 3663 and 18 U.S.C. § 3663A.

Third, the express use of the word "proximate" in the definition of a "victim" in 18 U.S.C. § 3663(a)(2) and 18 U.S.C. § 3663A(a)(2), renders conspicuous the omission of the term "proximate" from the definition of a "victim" in 18 U.S.C. § 2259(c), and the description of the losses in 18 U.S.C. § 2259(b)(3)(A)-(E)—especially where 18 U.S.C. § 2259(b)(3)(F) uses the word "proximate." Granted, the word "proximate" was not inserted in the definition of "victim" in 18 U.S.C. § 3663(a)(2) and 18 U.S.C. § 3663A(a)(2) until April 24, 1996, nearly two years after the enactment of 18 U.S.C. § 2259(c), on September 14, 1994.[15] However, it appears telling that,

---

15. More specifically, 18 U.S.C. § 2259(c) was enacted on September 13, 1994. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, sec. 40113(b)(1), § (f), 108 Stat. 1796, 1910 (codified at 18 U.S.C. § 2259[c]). Subsequently, 18 U.S.C. § 3663(a)(2) was amended on April 24, 1996, so that the definition of "victim" no longer meant merely "a person directly harmed as a result of the commission of an offense" but "a person directly and proximately harmed as a result of the commission of an offense." *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, sec.

when Congress chose to amend the definition of "victim" in 18 U.S.C. § 3663(a)(2) and 18 U.S.C. § 3663A(a)(2) on April 24, 1996, it did not similarly amend the definition of "victim" in 18 U.S.C. § 2259(c)—a closely related statute.[16] The consciousness of this decision appears to be even clearer when one considers that Congress nonetheless made other amendments to 18 U.S.C. § 2259 on April 24, 1996.[17] It is difficult for the undersigned to understand how the D.C. Circuit could conclude that these changes to 18 U.S.C. § 3663(a)(2) and 18 U.S.C. § 3663A(a)(2) did not seek to clarify, and effectively change, those statutes' earlier-enacted definition of "victim" (thus rendering them irrelevant to the construction to 18 U.S.C. § 2259). To conclude, as the D.C. Circuit does, that at most the above-described legislative history shows that 18 U.S.C. § 2259(c)'s use of the phrase "as a result of" is not the only way to impose a proximate cause requirement appears to be an exercise of circular reasoning (i.e., assuming a meaning to prove the existence of that meaning).

Again, these aspects of the Second Circuit's reasoning in *Aumais* are mentioned merely in the event the Second Circuit has occasion to revisit the issue of whether probable cause is required in 18 U.S.C. § 2259. Of course, none of the above-described points relieve the undersigned of his duty to faithfully apply the law as the Second Circuit has pronounced it, which the undersigned will now do.

## D. The Amount of Vicky's Losses that Were Proximately Caused by Defendant's Commission of the Crime in Question

Generally, resolving the issue of whether "proximate causation" exists requires a *policy* determination rather than a purely *factual* determination—whether a defendant's conduct was of such a nature that he or she *should be* held responsible for it. *See Restatement (Third) of Torts*, § 26, *Comment d.* (2011) ("Proximate cause . . . narrows the relevant factual causes based on normative grounds for limiting liability, even when tortious conduct is a factual cause of harm."); *Prosser and Keeton on Torts*, §§ 41–42, at 264, 272 (5th ed. 1984) ("'Proximate cause' . . . is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct. . . . Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice of policy. . . . [The proximate cause determination asks] whether the conduct has been so significant and important a cause that the defendant should be held responsible").

In making this policy determination, courts have historically taken into consideration such factors as the reasonable foreseeability of the particular injury caused by the conduct (sometimes called the

---

205(a)(1)(F), § (a)(2), 110 Stat. 1214, 1230 (codified at 18 U.S.C. § 3663[a][2] ). Similarly, 18 U.S.C. § 3663A(a)(2) was amended on April 24, 1996, so that the definition of "victim" no longer meant merely "a person directly harmed as a result of the commission of an offense" but "a person directly and proximately harmed as a result of the commission of an offense." *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, sec. 204(a), § (a)(2), 110 Stat. 1228 (codified at 18 U.S.C. § 3663A[a][2] ).

**16.** *See* 2B N. Singer, *Sutherland on Statutory Construction* § 51.2 (7th ed. 2011) ("[W]here the legislature has inserted a provision in only one of two statutes that deal with closely related subject matter, it is reasonable to infer that the failure to include that provision in the other statute was deliberate rather than inadvertent.").

**17.** *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, sec. 204(c), 110 Stat. 1231 (codified at 18 U.S.C. § 2259).

**118**

"foreseeability standard") and/or the factual directness of the causal connection between the conduct and the injury, i.e., whether there were other intervening independent causes of the injury (sometimes called the "direct-consequences standard").[18] Moreover, recently some courts have replaced the "foreseeability standard" and "direct-consequences standard" with a "risk standard."[19] Pursuant to this standard, an "actor . . . [is] held liable only for harm that was among the potential harms—the risks—that made the actor's conduct tortious." *Restatement (Third) of Torts*, § 26, *Comment e.* (2011).

■ The Court need not, and will not, attempt to pick and choose among these three sometimes-conflicting approaches, in this Decision and Order.[20] This is because, under any of the these three approaches, the Court would, and does, after careful consideration, find that Defendant's crime was a *proximate cause* of Vicky's losses (described below in Parts III.C.1 to III.C.4. of this Decision and Order). The Court makes this finding because the Government has proved, by a preponderance of the evidence, that (1) Defendant received pornographic images of Vicky from the Internet "[f]rom on or about 2009 to July 2010," and that he possessed such pornographic images of her "[o]n or about August 13, 2010," and (2) Vicky has sustained, and continues to sustain, significant

**18.** *See, e.g., Restatement (Second) of Torts*, § 548A, *Comments a., b.* (1977) (considering reasonable foreseeability of particular injury, factual directness of causal connection, and intervention of other independent causes as factors in deciding whether proximate causation exists); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* at 823 (3d ed. 1982) ("The four 'tests' or 'clues' of proximate cause in a criminal case are (1) expediency, (2) isolation, (3) foreseeability and (4) intention.").

**19.** *See Restatement (Third) of Torts*, § 26, *Comment e.* (2011) ("Limiting liability to harm arising from the risks created by the tortious conduct has the virtue of relative simplicity. It also provides a more refined analytical standard than a foreseeability standard or an amorphous direct-consequences test. Furthermore, the standard adopted in this Section imposes limits on liability by reference to the reasons for holding an actor liable for tortious conduct in the first place. The risk standard appeals to intuitive notions of fairness and proportionality by limiting liability to harms that result from risks created by the actor's wrongful conduct, but for no others. It also provides sufficient flexibility to accommodate fairness concerns raised by the specific facts of a case.").

**20.** The Court notes that, generally, New York State courts employ a standard that essentially uses reasonable foreseeability and direct consequences as factors in determining proximate causation. *See Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 314–15, 434 N.Y.S.2d 166, 414 N.E.2d 666 (N.Y.1980) ("Depending upon the nature of the case, a variety of factors may be relevant in assessing legal cause. . . . [T]he plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury. . . . Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence. . . ."). The Court notes further that, while the New York standard uses the term "substantial cause" in defining proximate causation, the *Restatement (Third) of Torts* has moved away from using that term. *See Restatement (Third) of Torts*, § 29, *Comment: a. History & Reporter's Note* (2011) ("The 'substantial factor' requirement for legal cause in the Second Restatement of Torts has often been understood to address proximate cause, although that was not intended. Because the rules in this Chapter address the grounds for limiting liability with greater precision than the substantial-factor standard, this Restatement does not use that term. . . . [T]he substantial-factor requirement contained in the Restatement Second of Torts was intended only to address factual causation, although that has been much misunderstood.").

psychological damage as a result of her knowledge that unidentified individuals have downloaded pornographic images of her from the Internet on unidentified occasions, including (but not limited to) occasions between April 10, 2009, and August 14, 2010.[21]

More specifically, the Court finds that it was *reasonably foreseeable* to users of child pornography, like Defendant, that Vicky would sustain the losses described below by knowing that unidentified individuals, like Defendant, were downloading those pornographic images of her from the Internet on unidentified occasions in 2009 and 2010.[22] Moreover, there was a *direct causal connection* between Defendant's

downloading pornographic images of Vicky from the Internet in 2009 and 2010, and the losses described below stemming from her knowledge that unidentified individuals were downloading those pornographic images of her from the Internet on unidentified occasions in 2009 and 2010.[23] Finally, the losses described below fall within the *potential harms* that made Defendant's conduct criminal: invading Vicky's privacy, and indeed re-traumatizing her, by downloading pornographic images of her from the Internet.[24]

Because the Government has submitted a Letter to the Judge, three Victim Impact Statements, and three forensic psychological evaluations (mentioning Vicky's knowl-

**21.** As indicated above in Part I.A. of this Decision and Order, the evidence of causation adduced by the Government includes the following: (1) a Letter to the Judge and Victim Impact Statement verified by Vicky on June 12, 2010; (2) a verified Victim Impact Statement by Vicky's mother dated October 1, 2010; (3) a verified Victim Impact Statement by Vicky's step-father dated October 1, 2010; (4) a verified written report, dated May 22, 2009, of a forensic psychological evaluation of Vicky, performed on April 10, 2009; (5) a verified written report, dated December 2, 2009, of a forensic psychological evaluation of Vicky, performed on November 6, 2009; (6) a verified written report, dated July 5, 2010, of a forensic psychological evaluation of Vicky, performed on May 29, 2010; (7) a transcript of a hearing, held on December 22, 2009, in which Vicky's forensic psychologist testified regarding his evaluation of her; (8) a vocational assessment of Vicky dated March 10, 2010; and (9) a forensic economic analysis of Vicky's lost wages dated November 10, 2010. *See, e.g.,* Exs. 1–3, 5, 6 and 8 to Ltr. from Vicky's Representative (dated June 21, 2011).

**22.** *See, e.g., U.S. v. Baxter,* 394 Fed.Appx. 377, 379 (9th Cir.2010) ("The United States met its burden of establishing proximate cause by showing how Vicky's harm was generally foreseeable to casual users of child pornography like [the defendant].").

**23.** *See, e.g., U.S. v. Brunner,* 08–CR–0016, 2010 WL 148433, at *2 (W.D.N.C. Jan. 12, 2010) ("In receiving and possessing the por-

nographic images of Vicky and Misty taken while they were children, Defendant participated in an ongoing cycle of abuse and thereby contributed to the victims' mental and emotional trauma.... That the criminal behavior of Defendant in this case caused specific harm to Misty and Vicky is also well-documented by the victim impact statements and psychological reports submitted with the Government's motion for restitution."); *U.S. v. Hicks,* 09–CR–0150, 2009 WL 4110260, at *4 (E.D.Va. Nov. 24, 2009) ("[T]here is ample evidence that when Hicks sought to receive the pornographic images depicting Vicky's abuse, his actions presented a sufficiently proximate tie to her ongoing injuries to justify an award of restitution under § 2259. Vicky and those closest to her attest, first-hand, to the ongoing trauma she suffers each time the Vicky series is traded and viewed.").

**24.** *See, e.g., U.S. v. Monzel,* 746 F.Supp.2d 76, 88 (D.D.C.2010) (finding that, under the "harm within the risk" approach adopted in the *Restatement (Third) of Torts* § 29 [2010], "[t]he losses alleged by the Government clearly fall within the scope of this risk: all of the victims' alleged losses arise out of the need for ongoing psychological treatment and their inability to maintain normal, emotionally healthy lives as a result of the knowledge that Monzel and others continue to possess images of their abuse").

edge of unidentified people who have downloaded her image) that were drafted *after* Defendant "might as well have been [arrested]" for the crimes at issue, the Court does not perceive the Second Circuit's recent holding in *Aumais* to preclude, in any way, a finding of proximate causation, under the circumstances.[25] Indeed, the evidence of such post-misconduct knowledge by Vicky (and even the post-Indictment knowledge by Vicky) is so copious that the Court finds the conclusion of proximate causation to be difficult to avoid.

In particular, the record establishes that Defendant *received* Vicky's images, and thus could have been arrested for such receipt, "[f]rom on or about 2009 to July 2010" (the dates between which Defendant is alleged, in the Indictment, to have received those images). (Dkt. No. 1, "Count One.") Similarly, the record establishes that Defendant *possessed* Vicky's images, and thus could have been arrested for such possession, "on or about August 13, 2010" (the date on which Defendant is alleged, in the Indictment, to have possessed those images). (Dkt. No. 1, "Count Three.")[26]

Accordingly, the Government provided, in pertinent part, the following evidence: (1) a verified Victim Impact Statement by Vicky's mother dated October 1, 2010, stating, *inter alia*, that her daughter knows, and is traumatized by the knowledge, that

people still download her images "everyday"; (2) a verified Victim Impact Statement by Vicky's step-father dated October 1, 2010, stating, *inter alia*, that his step-daughter experiences "constant reminders" that people are still downloading her images; (3) a Letter to the Judge and Victim Impact Statement verified by Vicky on June 12, 2010, stating, *inter alia*, that she lives "everyday" with the knowledge that "someone somewhere" is downloading her images; (4) a verified forensic psychological evaluation of Vicky, performed on May 29, 2010, stating, *inter alia*, that Vicky knew that people are still downloading her images; and (5) a transcript of a hearing, held on December 22, 2009, in which Vicky's forensic psychologist testified, *inter alia*, the National Center for Missing and Exploited Children still informs her that people have been downloading her images, sometimes between four and ten times per day; and (6) verified forensic psychological evaluations of Vicky, performed on November 6, 2009, and May 29, 2009, each stating, *inter alia*, that Vicky knew that people are still downloading her images.

Granted, some courts that find that no proximate causation has been shown rely on the fact that no evidence exists that the victim knew that the particular defendant in question downloaded a particular image of her on a particular occasion.[27] Howev-

---

**25.** *See Aumais,* 656 F.3d at 154–55 ("Dr. Silberg's evaluation of Amy, upon which the doctor's testimony was based, took place on June 11–12, 2008, July 29, 2008, and November 10, 2008, whereas Aumais was not arrested at the border until November 16, 2008. While Dr. Silberg may describe generally what Amy suffers from knowing that people possess her images, Dr. Silberg cannot speak to the impact on Amy caused by *this defendant* .... This opinion does not categorically foreclose payment of restitution to victims of child pornography from a defendant who possesses their pornographic images.... But where the *Victim Impact Statement* and the

psychological evaluation were drafted before the defendant was even arrested—or might as well have been—we hold as a matter of law that *the victim's loss was not proximately caused by a defendant's possession of the victim's image.*") [emphasis in original].

**26.** The Court notes that Defendant was arrested and detained on October 7, 2010. (Dkt. No. 29, at 1.)

**27.** *See, e.g., U.S. v. Chow,* 760 F.Supp.2d 335, 343 (S.D.N.Y.2010) ("[T]he Government has not alleged that Amy and Vicky were aware of this Defendant's possession before the Gov-

er, the Court finds such a rationale to be flawed for three reasons: (1) such knowledge is not required for proximate cause to exist where, as here, the injuries claimed by the victim stem, in large part, from the fact that she did not know who was downloading her pornographic images from the Internet;[28] (2) to construe 18 U.S.C. § 2259 as requiring a victim's knowledge of a particular defendant, in cases against defendants who downloaded child pornography on the Internet, would be to construe the statute as providing for relief that, as a practical matter, is usually extremely difficult to grant, in violation of the principle of statutory construction that statutes shall be presumed to not intend impossible results;[29] and (3) to construe 18 U.S.C. § 2259 as requiring the Government to show such knowledge possessed by victims would, as a practical matter, violate the spirit, if not the letter, of 18 U.S.C. § 3664 (which prohibits victims from having to participate in any phase of the restitution order),[30] by requiring them to take affirmative action such as (a) signing an affidavit, or appear in court, to testify to such knowledge, (b) answering questions during psychotherapy designed to demonstrate such knowledge, and/or (c) agreeing to personally accept a direct notification of such information from the National Center for Missing and Exploited Children, the United States Department of Justice's Victim Notification System, United States Attorney's Office and/or United States Probation Office.

With regard to this third reason, the Court notes that Vicky's representative has explained, in her verified letter of June 21, 2011, that, after Vicky decided to attend a sentencing hearing in June of 2009 for the purpose of reading her Victim Impact Statement, she regressed and became increasingly symptomatic (requiring even more assistance with, *inter alia,* counseling expenses, educational expenses, vocational training expenses, and simple living expenses). This experience exemplifies the exacerbating and counter-productive effect that a contrary ruling (i.e., requiring re-notification and thus re-victimization and a possible increase in recoverable losses, in order to obtain restitution) would have on victims of child pornography, such as Vicky. Requiring any of these steps to occur before allowing a victim appropriate restitution would have the effect of fur-

---

ernment advised them of such."); *U.S. v. Faxon,* 689 F.Supp.2d 1344, 1357 (S.D.Fla.2010) ("[N]one of the exhibits reference any specific knowledge that either Vicky or Amy have concerning this Defendant and his criminal conduct for which he has been convicted in this case."); *U.S. v. Berk,* 666 F.Supp.2d 182, 191 (D.Me.2009) ("In the documentation supporting the Victims' restitution requests, there is no mention of the impact that learning of Mr. Berk's offense had on either of the Victims.").

28. For example, as Vicky explains in her Letter to the Judge, "[N]ot knowing [the identity of the persons who are re-victimizing her] is a big part of what causes me such problems." Ltr. to Judge from Vicky, at 1 (verified on June 12, 2010). The Court notes that, in the analogous context of negligence cases, there has long been a trend of easing a plaintiff's

burden regarding showing proximate causation, where two defendants are both clearly at fault but the plaintiff does not (and realistically cannot) know which one's negligence caused her injury. *Zuchowicz v. U.S.,* 140 F.3d 381, 388, n. 6 (2d Cir.1998).

29. *See* 2A N. Singer, *Sutherland on Statutory Construction* § 45.12 (7th ed. 2011) ("It has also been said that the construction of a statute that is unreasonable, illogical, unjust, unworkable, or inconsistent with common sense should be avoided."); *see, e.g., Hughey,* 78 F.3d at 1529 ("Congress is presumed not to have intended ... impossible ... results.").

30. *See* 18 U.S.C. § 3664(g)(1) ("No victim shall be required to participate in any phase of a restitution order.").

thering the victimization and resulting harm which the statute intends to prevent.

In any event, even if such knowledge were required, the Court finds that it exists in this case. For the sake of brevity, the Court will set aside the fact that it appears from the record that the Government has, during the time in question, fulfilled its statutory requirement to use its "best efforts" to notify Vicky of the current proceeding so as to protect her rights under the statute. 18 U.S.C. § 3771(c)(1). More important is the fact that the Government has shown, by a preponderance of the evidence, that Vicky's representative, through her diligent monitoring of the "Vicky" series of cases, dutifully discovered the existence of the current action (which was filed on August 13, 2010).[31] In addition, the Government has shown by a preponderance of the evidence that, because restitution is so important to Vicky, her representative has dutifully communicated to Vicky the cases in which she intends to make restitution requests, including the current case.[32]

■ Other courts that find that no proximate causation has been shown rely on the fact that the Government did not *precisely quantify* the amount of harm Defendant caused separate and apart from the harm caused by (a) the other individuals who downloaded her images on the Internet, and (b) individuals involved in producing the images.[33] However, the Court finds this rationale to be flawed for four reasons: (1) there is no need to consider the amount of harm caused by individuals involved in producing the images where, as here, the Court finds that the Government has proved, by a preponderance of the evidence, that *all* of the losses under consideration were due to the victim's revictimization, caused by all of the individu-

---

31. For example, Vicky's representative has adduced a declaration stating as follows: (1) on a daily basis between November of 2008 and April of 2011, she personally received numerous email notifications from the United States Department of Justice's Victim Notification System regarding the "Vicky" series of cases; (2) she personally reviewed an average of six to ten cases per day to select those cases in which to make restitution requests (such as the request she made in the current case); (3) "[i]n most cases, making a restitution request involve[d] reviewing pleadings available on PACER [the federal judiciary's Public Access to Court Electronic Records Service]"; and (4) in addition, "[i]n many cases" she spoke to the *Assistant United States Attorney* or Victim Witness Specialist assigned to the case. *See* Hepburn Decl., at ¶¶ 7–8, 13, 19 (dated Apr. 2, 2011).

32. For example, Vicky's representative has adduced a verified letter stating as follows: (1) "much of the time [she has] spent [on the case] has been in meeting with the victim and her family . . . ."; (2) "[r]estitution is of great importance to 'Vicky' as it is the only way that she can afford the therapy and counseling that she needs to overcome the harm done by the proliferation of her images"; and (3) "[m]y client and her family ask that their impact statements and her letter to the judge [updated on October 1, 2010, six weeks after the filing of the Indictment in this action] be read aloud at the time of sentence." Ltr. from Vicky's Representative, at 3, 6, 10–11 (dated June 21, 2011).

33. *See, e.g., U.S. v. Chow*, 760 F.Supp.2d 335, 343 (S.D.N.Y.2010) ("[T]he Government has not quantified the amount of damage caused by each act of Defendant's possession of the materials."); *U.S. v. Scheidt*, 07–CR–0293, 2010 WL 144837, at *4 (E.D.Cal. Jan. 11, 2010) (finding that the government did not prove the amount of harm the defendant caused to Amy and Vicky separate from the total amount of their harm); *U.S. v. Van Brackle*, 08–CR–0042, 2009 WL 4928050, at *5 (N.D.Ga. Dec. 17, 2009) (holding that the court could not reasonably estimate what portion of Amy's and Vicky's harm was proximately caused by the defendant's receipt of their images, "as opposed to the initial abuse or unknown other acts of receipt and distribution that occurred before and independent of [the] defendant's act").

als downloading pornographic images of her from the Internet;[34] (2) in any event, with regard to the amount of harm caused by Defendant in relation to the harm caused by the other individuals who downloaded her images on the Internet, "mathematical precision" is not required in order to show such causation under 18 U.S.C. § 2259;[35] (3) construing 18 U.S.C. § 2259 as requiring the Government to quantify precisely how much harm a defendant caused the victim, in order to prove that the defendant·caused any harm at all to the victim pursuant to 18 U.S.C. § 2259(b)(3)(A)-(E), violates the spirit, if not the letter, of the joint-and-several-liability rule imposed by 18 U.S.C. § 3664(h),

discussed below in Part III.D.5. of this Decision and Order; (4) to construe the statute as requiring such a precise quantification, in cases involving a wide audience of users of child pornography, would be to construe the statute as providing for relief that, as a practical matter, is nearly impossible to grant (especially given 18 U.S.C. § 3664's prohibition against requiring victims to participate in any phase of the restitution order),[36] in violation of the above-described principle of statutory construction.

In any event, even if the amount of harm caused by Defendant must be quantified in order for a finding of proximate causation to be rendered, that harm need

---

**34.** The Court acknowledges that, in his three psychological reports, Dr. Randall L. Green of course recognizes the distinction between injuries resulting from "Type I Trauma" (referring to Vicky's original victimization) and injuries resulting from Type II Trauma (referring to her re-victimization). However, his first report focuses primarily on the latter injuries. For example, in it, he explains that, by the time Vicky learned of the distribution of her images on the Internet (five years after the cessation of her original victimization), she had made significant progress in therapy, experiencing a decrease in her symptoms of Post Traumatic Stress Disorder and an increase in her sense of security (and even receiving a Trauma Symptom Checklist for Children Report that fell within "normal" limits). Green Report, at 30–31 (dated May 22, 2009). In addition, he explains that it was her re-victimization that "shattered" the "boundaries" that she had known, and threw her world into "chaos." *Id.* at 7. Moreover, his second two reports focus nearly exclusively on Vicky's re-victimization, mentioning her original victimization only as a point of reference, for example, to explain that it "pale[d] in comparison" to her re-victimization. *See, e.g.,* Green Report, at 7 (dated Dec. 2, 2009). Finally, and perhaps most importantly, the Letter to the Judge and three Victim Impact Statements that have been submitted mention Vicky's original victimization only to explain the nature of her constant re-victimization, on which they focus nearly *exclusively.* For ex-

ample, in her Letter to the Judge, Vicky specifically explains that she has some "peace" in knowing that the perpetrator of the original victimization is in prison, where he cannot again victimize her; however, her suffering comes from the fact that she does not know that about "any of these other men." Ltr. to Judge from Vicky, at 1 (verified on June 12, 2010).

**35.** *See U.S. v. Doe,* 488 F.3d 1154, 1159–60 (9th Cir.2007) ("[W]e and the other circuits addressing restitution orders under Section 2259 have not imposed a requirement of causation approaching mathematical precision."); *accord, U.S. v. Monzel,* 641 F.3d 528, 540 (D.C.Cir.2011).

**36.** *See, e.g., U.S. v. Paroline,* 672 F.Supp.2d 781, 793 (E.D.Tex.2009) ("Although [proving the portion the victim's losses caused by the defendant] may seem like an impossible burden for the Government, the Court is nevertheless bound by the requirements of the statute."); *U.S. v. Chow,* 760 F.Supp.2d 335, 344 (S.D.N.Y.2010) ("Here, the Government has not presented any evidence as to how much of the victims' losses were caused by Defendant's specific acts.... The Court recognizes that under the current formulation of § 2259, the Government might be unlikely to show the causation required to obtain restitution orders against defendants convicted of possession of widely distributed child pornography....").

only be *reasonably* quantified, and, under the circumstances, the Court reasonably quantifies that harm as sixty-eight one hundredths of one percent (.68%) of all the harm that Vicky incurred from individuals downloading pornographic images of her from the Internet. The Court arrives at this calculation based on the fact that approximately 146 defendants, including this Defendant, have been successfully prosecuted for unlawfully possessing or receiving the "Vicky" series.[37]

Turning to a discussion of the recoverable losses that were proximately caused by Defendant's commission of the crime in question, as stated in the preceding paragraph, the Court finds that Defendant proximately caused sixty-eight one hundredths of one percent (.68%) of Vicky's total recoverable losses. The Court further finds that these total recoverable losses amount to $975,917.64 (nine hundred seventy-five thousand, nine hundred seventeen dollars and sixty-four cents), itemized below in Parts III.D.1. through III.D.4. of this Decision and Order. As a result, the Court finds that Defendant proximately caused $6,636.24 (six thousand six hundred thirty-six dollars and twenty-four cents) of Vicky's total recoverable losses.

In the alternative, the Court finds that it is permissible and reasonable to award this amount of restitution to Vicky as nominal damages pursuant to 18 U.S.C. § 2259.[38]

### 1. Future Counseling Expenses

■ The Government requests restitution for future counseling expenses in the amount of $108,975.00, which cover counseling for the remainder of Vicky's life.

The verified written reports of forensic psychologist Dr. Randall L. Green establish, *inter alia*, that Vicky has suffered significant, permanent psychological damage as a direct result of the knowledge that images of her victimization, humiliation and exploitation have been downloaded and viewed by numerous individuals[, and that] she will continue to suffer from the knowledge and belief that those images of her childhood abuse are at a high probability to continue to be downloaded for prurient purposes." The Court notes that the verified written report of vocational consultant Merrill Cohen further establishes that Vicky needs counseling, as evidenced by the fact that, when she is not engaged in therapy, she suffers from bouts of anxiety, which result in her having to leave college.

Under the circumstances, the Court finds that the Government has established, by a preponderance of the evidence, that the request for future counseling expenses in the amount of $108,975.00 is reasonable.

### 2. Educational and Vocational Counseling Needs

■ The Government requests restitution for educational and vocational counseling expenses in the amount of $147,830.00.

---

**37.** *See* Ex. C to Government's Sentencing Memorandum (attaching Chart of Restitution Cases, current as of March 30, 2011). The Court would add only that its own research of published decisions on Westlaw appears generally consistent with this figure, revealing, *inter alia*, that, as of November 2009, it was estimated that at least fifty defendants would be prosecuted for possessing or receiving images of Vicky. *See U.S. v. Hicks*, 09–CR–0150, 2009 WL 4110260, at *6 (E.D.Va. Nov. 24, 2009) ("The Court believes that *at least*

fifty defendants will be successfully prosecuted for unlawfully possessing or receiving the Vicky series, given the numbers prosecuted to date.") [emphasis added].

**38.** *See U.S. v. Klein*, 10–CR–0333, 829 F.Supp.2d 597, 607–09, 2011 WL 5389358, at *9–11 (S.D.Oh. Nov. 8, 2011) (directing defendant to pay nominal damages to "Amy" in amount of $5,000); *U.S. v. Church*, 701 F.Supp.2d 814, 834–35 (W.D.Va.2010) (directing defendant to pay nominal damages to "Amy" in amount of $100).

The verified written report of vocational consultant Merrill Cohen establishes, *inter alia*, that Vicky (1) has suffered, and will continue to suffer, setbacks while attempting to complete college, which will result in her incurring additional semester costs, (2) had a difficult time working while initially attending school, and now longer will be able to work while attempting to finish her degree, (3) will be limited in her career choice, (4) will enter the workforce at least one and a half years later than other students her age, and (5) will require the guidance of a rehabilitation counselor during her career development and educational planning.

More specifically, Mr. Cohen's report establishes that Vicky has, or will, incur the following expenses: (1) $34,580 for one additional semester of undergraduate school and two additional semesters of graduate school (due to her having to reduce her credit load to twelve credits hours per semester to afford her sufficient time to continue therapy);[39] (2) $33,000 in lost earnings from part-time employment (during the 5.5 years that Vicky attends undergraduate and graduate school); (3) $76,5000 in lost earnings due to one-and-a-half years of delayed entry into the workforce (in the field in which Vicky has expressed an interest in working); and (4) $3,750 for 30 hours of rehabilitation counseling for educational and career planning during Vicky's last year of undergraduate studies (to help her pursue a profession that will not contribute to, and/or further, her struggles caused by being victimized and re-victimized).

Under the circumstances, the Court finds that the Government has established, by a preponderance of the evidence, that a request for $147,830.00 in restitution for educational and vocational counseling needs is reasonable.

### 3. Lost Wages and Benefits

■ The Government requests restitution for lost wages and benefits in the amount of $722,511.00.

The written report of economist Stan V. Smith, Ph.D., calculates, *inter alia*, the lost wages and benefits that Vicky will suffer over the course of her life, until she reaches age sixty-seven (67), assuming an *additional* three-year delay of her entry into the workforce (due to additional semesters of college she is anticipated to need given her diminished capacity to study full time) and a twenty percent (20%) reduction in worklife (due to increased job changes and time off from work) as a result of the victim's suffered abuse. Granted, there are many variables that could conceivably diminish the need for the requested restitution. However, based on its careful review of all the papers submitted, the Court finds that Dr. Smith's calculations and assumptions are fair, reasonable and correct.

Under the circumstances, the Court finds that the Government has established, by a preponderance of the evidence, that a request for $722,511.00 in restitution for lost wages and benefits is reasonable.

### 4. Attorney's Fees and Out-of-Pocket Expenses

■ The Government requests restitution for attorney's fees in the amount of $203,140.00, and out-of-pocket expenses for forensic and economic evaluations in the amount of $42,241.04.

The Government has submitted a declaration of Vicky's representative establish-

---

**39.** Mr. Cohen's report establishes that the annual cost to attend the undergraduate program at Vicky's college, including tuition, room and board, books, and other miscellane-ous items, is $22,296.00; and the annual cost to attend the graduate program at Vicky's college is $23,432.00.

ing that Vicky has incurred $203,140.00 in legal fees and $42,241.04 in out-of-pocket expenses for forensic and economic evaluations. The Court notes that, in *U.S. v. Amato*, 540 F.3d 153 (2d Cir.2008), the Second Circuit included in a restitution order (issued pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3664[f][1][A]) attorney fees and auditing costs incurred by the victim, because, "even assuming attorney fees and auditing costs must be a direct and foreseeable result of the offense[,] such a requirement was clearly met here," where the fees and costs were "not surprising" and "foreseeable" by the criminal defendants. *Amato,* 540 F.3d at 161–62.

Under the circumstances, the Court finds that the Government has established, by a preponderance of the evidence, that an award for attorney's fees in the amount of $203,140.00, and out-of-pocket expenses for forensic and economic evaluations in the amount of $42,241.04 is reasonable.

### 5. Offset of Total Amount by Amounts Already Paid

Adding together the amounts listed above in Parts III.D.1. through III.D.4. of this Decision and Order, the Court calculates the total amount of recoverable losses caused by all the individuals who downloaded pornographic images of Vicky to be $1,224,697.04. However, as Vicky's representative acknowledged in her letter of June 21, 2011, these losses have been partially offset by the $248,779.40 in restitution payments that Vicky has already received. Thus, explains Vicky's representative, the net amount of recoverable losses deserving of restitution is $975,917.64 (nine hundred seventy-five thousand, nine hundred seventeen dollars and sixty-four cents).

After carefully considering the matter, the Court agrees. The Court would add only that Defendant is mistaken to the extent he suggests that the United States Probation Office's Presentence Report indicates that the $248,779.40 in payments already received by Vicky should be subtracted from her $975,917.64 in net total losses (as opposed to being considered as already having been subtracted from her $1,224,697.04 in gross total losses). (Dkt. No. 22, at 1, 3.) In fact, a careful reading of the Presentence Report, and the record, reflect that the $248,779.40 in payments already received by Vicky have already been taken into account, in arriving at her request for $975,917.64 in total recoverable losses. (*See, e.g.,* Dkt. No. 21, at 5 [attaching ¶ 13 of Presentence Report stating, "Notably, the requested amount [of gross economic losses of $1,224,697.04] has been reduced by $248,779.40 in payments already received [resulting in net economic losses of $975,917.64]."].)

### E. Whether It Is Permissible, and Appropriate, Under 18 U.S.C. § 2259, for the Court to Hold Defendant Jointly and Severally Liable for Payment of the Full Amount of Restitution

As stated above in Part III.D. of this Decision and Order, the Court finds that *all* of the losses were caused by individuals by downloading pornographic images of Vicky on the Internet. In doing so, of course, the Court acknowledges that individuals other than Defendant have been convicted of downloading those pornographic images of Vicky on the Internet, each contributing to those losses. However, this fact does not preclude a finding that Defendant is liable for the losses caused by other individuals, because 18 U.S.C. § 3664 permits the Court to impose the restitution award jointly and severally. *See* 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may

make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.").

The Court acknowledges that, in *Aumais*, the Second Circuit observed that "it would seem that [18 U.S.C. § 3664] does not contemplate apportionment of liability among defendants in different cases, before different judges, in different jurisdictions around the country," because "Section 3664(h) implies that joint and several liability may be imposed only when a single district judge is dealing with multiple defendants in a, single case (or indictment)." *Aumais*, 656 F.3d at 156.

In making this observation, the Second Circuit relied on a decision issued by the D.C. Circuit that cites two circuit court decisions for the point of law that a district judge cannot find a defendant jointly and several liable, under 18 U.S.C. § 3664, for the losses caused by defendants in other cases, before different judges, in different

jurisdictions around the country. *See U.S. v. Monzel*, 641 F.3d 528, 539 (D.C.Cir. 2011) (citing *U.S. v. McGlown*, 380 Fed. Appx. 487, 490–91 [6th Cir.2010], and *U.S. v. Channita*, 9 Fed.Appx. 274, 274–75 [4th Cir.2001]).

As an initial matter, even if the two circuit court decisions in question stand for the above-described point of law,[40] neither of them addresses the fact that the express language of 18 U.S.C. § 3664(h) does not say whether the referenced "defendants" *must* be in the same case before the same judge, or whether they may be in different cases before different judges. Indeed, at least four district court cases exist supporting the latter interpretation.[41]

■ Moreover, while the two circuit court decisions cited by the D.C. Circuit support the former interpretation, that interpretation appears to undermine, if not contradict, the legislative intention of providing restitution as a remedy under 18 U.S.C. § 2259—to *fully* restore victims to their prior state of well being.[42] This is

---

**40.** While the D.C. Circuit relies on the Fourth Circuit's decision in *U.S. v. Channita*, 9 Fed. Appx. 274, 274–75 (4th Cir.2001), for the above-described point of law, the Court believes a closer reading of *Channita* is appropriate. What the Fourth Circuit appeared to hold in *Channita* was that, because there was only one defendant in that case, that defendant was responsible for the full amount of the victim's loss, under 18 U.S.C. § 3664(h). *Channita*, 9 Fed.Appx. at 274–75. This holding does not appear to logically compel a conclusion that the defendant in question could not have been held jointly and severally liable, under 18 U.S.C. § 3664(h), for the full amount losses caused by other defendants in that case *or in other cases* had there been such defendants.

**41.** In particular, the Court has found two district court cases imposing, under 18 U.S.C. § 3664(h), joint and severable liability on a defendant for the full amount of restitution owed to a victim of child pornography, including the portion of restitution owed to her

by other unidentified individuals (who were not a co-defendants in the case). *U.S. v. Hardy*, 707 F.Supp.2d 597, 610–15 (W.D.Pa. 2010); *U.S. v. Staples*, 09–CR–14017, 2009 WL 2827204, at *4 (S.D.Fla. Sept. 2, 2009). Similarly, the Court has found two district court cases in which a district judge has, under 18 U.S.C. § 3664(h), held a defendant jointly and severally liable for $541,370 restitution along with, *inter alia*, two individuals (i.e., Toby Martinez and Manny Aragon) who were defendants in a *different* case that was pending before a *different* judge (i.e., District Judge William P. Johnson). *U.S. v. Schiff*, 07–CR–0252, Judgment, at 5 (D.N.M. filed July 8, 2009) (Conway, J.); *U.S. v. Schultz*, 07–CR–0518, Judgment, at 4 (D.N.M. filed Apr. 30, 2009) (Conway, J.); *see also U.S. v. Martinez*, 610 F.3d 1216, 1223, n. 2 (10th Cir.2010).

**42.** *See, e.g.*, S.Rep. No. 104–179, at 22–23 (1996), *reprinted* in 1996 U.S.C.C.A.N. 924, 933 ("The committee believes that restitution

because, as a practical matter, each year that passes, the pool of individuals found to have downloaded Vicky's images on the Internet will likely increase.[43] Concomitantly, each new individual's relative share of losses (proximately caused by him) will likely decrease. What is worse, a certain percentage of those individuals will likely continue to be "judgment proof," lacking sufficient assets to pay restitution to Vicky. As a result, Vicky will likely never be able to recover all of her $975,917.64 in recoverable losses, unless district judges find defendants jointly and several liable, under 18 U.S.C. § 3664, for the losses caused by defendants in other cases, before different judges, in different jurisdictions around the country.[44] As was stated above in Part III.D. of this Decision and Order, 18 U.S.C. § 3664 shall be presumed to not intend an impossible result (i.e., requiring, but preventing, full restitution).[45]

In addition, both circuit court decisions cited by the D.C. Circuit hinge their holding on their interpretation of 18 U.S.C. § 3664(h), without even attempting to reconcile that interpretation with 18 U.S.C. § 3664(m). Section 3664(m) provides that the court may enforce a restitution order "by all other available and reasonable means," arguably including joint and several liability among defendants in other cases, before different judges, in different jurisdictions around the country. 18 U.S.C. § 3664(m)(1)(A)(ii). At least one circuit court has so construed 18 U.S.C.

§ 3664(m). See, e.g., In re Amy Unknown, 636 F.3d 190, 201 (5th Cir.2011) (stating that district court could order joint and several liability for a lone defendant such as Monzel under 18 U.S.C. § 3664[m][1][A], which provides that a district court may "enforce[ ]" a restitution order "by all other available and reasonable means").

■ For all of these reasons, the Court concludes that 18 U.S.C. § 3664 does, indeed, permit a district judge to find a defendant (appearing in a case before the judge) jointly and several liable for the losses caused by defendants in other cases, before different judges, in different jurisdictions around the country.

■ Furthermore, after carefully considering the issue, the Court finds that, under the circumstances, it is entirely fair, reasonable and appropriate to hold Defendant liable for payment of the *full* amount of restitution (rather than to apportion liability among all the individuals in question to reflect the level of contribution to Vicky's loss and economic circumstances of each individual). The Court makes this finding for four reasons.

First, as discussed above, given the likely decrease in each new defendant's relative share of responsibility, and the fact that a certain number of those defendants are likely without sufficient funds, it is only through joint and several liability that Vicky can be made economically whole, under the circumstances.

must be considered a part of the criminal sentence, and that justice cannot be considered served until full restitution is made.").

**43.** *See* Ex. C to Government's Sentencing Memorandum (attaching Chart of Restitution Cases, current as of March 30, 2011).

**44.** The Court notes that, during the two-and-a-half years in which Vicky has been attempting to recover restitution awards for the

$1,224,697.04 in total recoverable losses she has incurred, she has recovered only $248,779.40 or 20.3 percent (20%) of that amount. *See* Ex. C to Government's Sentencing Memorandum (attaching Chart of Restitution Cases, current as of March 30, 2011).

**45.** *See, supra,* note 29 of this Decision and Order.

Second, any perceived unfairness to Defendant is minimized, or eliminated, by the fact that the Court will qualify its order so that Defendant need pay Vicky *only* the amount not already paid by other individuals for the referenced loss. The Court notes that other courts have found a similar qualification sufficient to minimize or eliminate any perceived unfairness to a defendant. *See, e.g., In re Amy Unknown,* 636 F.3d 190, 201 (5th Cir.2011); *U.S. v. Staples,* 09–CR–14017, Transcript of Restitution Hearing, at 7–8 (S.D. Fla. filed Aug. 12, 2009); *U.S. v. Hoffman,* 08–CR–0027, Transcript of Sentencing Proceedings, at 14–16 (D. Nev. filed July 30, 2010); *U.S. v. Rosenberg,* 08–CR–0756, Transcript of Sentencing Proceeding, at 15–16 (N.D.N.Y. filed March 30, 2010) (Hurd, J.); *U.S. v. Burgess,* 09–CR–0017, Judgment, at 7 (W.D. N.C. filed Aug. 27, 2010).

Third, any confusion about who is responsible for ensuring that Vicky" does not receive a "double recovery" during the enforcement and/or collection of a judgment against Defendant is minimized, or eliminated, by the fact that the Court hereby directs that the Government, the United States Probation Office, and Vicky's representative shall fulfill that duty, which includes the duty to "track[ ] payments that ... involve defendants in numerous jurisdictions across the country." *Aumais,* 656 F.3d at 156. The Court is confident that Vicky's representative and the referenced Governmental officials possess the resources and conscientiousness to "determin[e] what amount [Vicky] has received," by "collecting data about hundreds of

cases, ascertaining what money has actually been paid, and determining what losses that money was intended to cover." *Id.* Indeed, the Court notes that those individuals have already started doing so. *See* Ex. C to Government's Sentencing Memorandum (attaching Chart of Restitution Cases, current as of March 30, 2011); Ltr. from Vicky's Representative, at 1 (dated June 21, 2011). Again, the Court notes that other courts have so relied on the Government (i.e., to communicate with Defendant, so as not to give the victim a windfall). *See, e.g., U.S. v. Hoffman,* 08–CR–0027, Transcript of Sentencing Proceedings, at 15–16 (D. Nev. filed July 30, 2010); *U.S. v. Rosenberg,* 08–CR–0756, Transcript of Sentencing Proceeding, at 15–16 (N.D.N.Y. filed March 30, 2010) (Hurd, J.).

Fourth, any Eighth Amendment concerns are ameliorated by the following facts: (1) the statute in question is properly considered as remedial, not punitive, in nature;[46] (2) in any event, while the imposition of full restitution (pursuant to joint and several liability) may sometimes appear harsh, it is neither (a) *grossly* disproportionate to the very serious crime of receiving and possessing child pornography,[47] nor (b) unusual in the constitutional sense.[48]

**ACCORDINGLY,** it is

**ORDERED** that Defendant is jointly and severally liable to Vicky for $975,917.64 (nine hundred seventy-five thousand, nine hundred seventeen dollars

---

**46.** *See, supra,* note 14 of this Decision and Order.

**47.** *See U.S. v. Arledge,* 553 F.3d 881, 899–900 (5th Cir.2008) (rejecting Eighth Amendment challenge to the imposition of full restitution, pursuant to joint-and-several liability, under Mandatory Victims Restitution Act, in context of mail fraud case), *accord, U.S. v. Newsome,*

322 F.3d 328, 330–42 (4th Cir.2003) (theft-of-trees case).

**48.** *See U.S. v. Dubose,* 146 F.3d 1141, 1144–47 (9th Cir.1998) (rejecting Eighth Amendment challenge to the Mandatory Victims Restitution Act, in part because "mandatory penalties may be cruel, but they are not unusual in the constitutional sense").

and sixty-four cents) in restitution, pursuant to 18 U.S.C. § 2259, and must pay to Vicky however much of this $975,917.64 amount that she has not already been paid for future counseling expenses and/or evaluation expenses; and it is further

**ORDERED** that the Government, the United States Probation Office, and Vicky's representative shall ensure that Vicky" does not receive a "double recovery" during the enforcement and/or collection of a judgment against Defendant.