UNITED STATES of America,

v.

**Avery LUNDQUIST, Defendant.**

**No. 5:10–CR–0417.**

United States District Court, N.D. New York.

Dec. 14, 2011.

Richard S. Hartunian, United States Attorney for the N.D.N.Y., of Counsel Tamara Thomson, Esq., Assistant United States Attorney, Syracuse, NY, for Government.

Lisa A. Peebles, Federal Public Defender for the N.D.N.Y., of Counsel Melissa A. Tuohey, Esq., Assistant Federal Public Defender, for Defendant.

### MEMORANDUM–DECISION and ORDER

GLENN T. SUDDABY, District Judge.

On June 17, 2011, the Court sentenced Avery Lundquist ("Defendant") following his conviction for violating 18 U.S.C. §§ 2252A(a)(2)(A), 2256(8)(A), and 18 U.S.C. §§ 2252A(a)(5)(B) (receiving and possessing child pornography). Before sentencing, the Government requested that the Court order Defendant to pay restitution to his crime's "victim" in the amount of $3,384,917.00 pursuant to 18 U.S.C. § 2259. During sentencing, the Court reserved decision on the issue of restitution, and indicated that it would decide the matter in the future. This is the Court's decision on the issue of restitution.

### TABLE OF CONTENTS

I. RELEVANT BACKGROUND ...........................................367
   A. Government's Request for Restitution...................................367
   B. Governing Statute ...............................................368

II. ANALYSIS ........................................................368
   A. Whether the Court Must Hold an Evidentiary Hearing Before Deciding
      the Government's Request for Restitution, Under the Circumstances.....368
   B. Whether Amy Is a "Victim" of Defendant's Crime, Within the Meaning
      of 18 U.S.C. § 2259(c) ..........................................369
   C. Whether 18 U.S.C. § 2259 Limits the Losses that Amy May Recover
      Pursuant to 18 U.S.C. § 2259(b)(3)(A)-(E) to Those Proximately
      Caused by Defendant's Commission of the Crime in Question ...........369
   D. The Amount of Amy's Losses that Were Proximately Caused by
      Defendant's Commission of the Crime in Question ....................370
      1. Future Counseling Expenses.......................................376
      2. Lost Wages and Benefits .........................................376
      3. Attorney's Fees and Other Costs ..................................377
      4. Total Amount of Recoverable Losses, and Share Caused by
         Defendant........................................................378
   E. Whether It Is Permissible, and Appropriate, Under 18 U.S.C. § 2259, for
      the Court to Hold Defendant Jointly and Severally Liable for
      Payment of the Full Amount of Restitution ..........................378

## I. RELEVANT BACKGROUND

### A. Government's Request for Restitution

On December 22, 2010, Defendant pleaded guilty of committing a crime under Chapter 110 of Title 18 of the United States Code. (Text Minute Entry filed Dec. 22, 2010; Dkt. No. 27.) More specifically, Defendant pleaded guilty to the following two crimes: (1) violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2256(8)(A) by receiving child pornography "on or about February 14, 2010"; and (2) violation of 18 U.S.C. §§ 2252A(a)(5)(B) by possessing child pornography "[o]n or about March 5, 2010." (Dkt. No. 8, at 1–2 [Indictment]; Text Minute Entry filed Dec. 22, 2010; Dkt. No. 27.)

On June 3, 2011, the Government requested in writing, *inter alia,* that the Court order Defendant to pay restitution to his crime's "victim," identified as "Amy,"[1] in the amount of $3,384,917.00, pursuant to 18 U.S.C. § 2259. (Dkt. No. 35, at Ex. A [attaching Letter from James R. Marsh, Esq., dated Apr. 14, 2011, at 25, filed under seal].) Joining in the Government's request was "Amy's" representative. (Dkt. No. 35.) On June 7, 2011, Defendant opposed that request in writing, and requested an evidentiary hearing. (Dkt. Nos. 23, 24.) On June 17, 2011, the Court heard oral argument from counsel on the issue of restitution. (Text Minute Entry dated June 17, 2011; Dkt. No. 31.)

At the time, the Court indicated its inclination to impose restitution in the amount of $37,126.50, which was generally based the fact that $48,483.00 had been awarded to Amy in *U.S. v. Aumais,* 08–CR–0711, 2010 WL 3034730 (N.D.N.Y. Aug. 3, 2010) (Sharpe, J.), *adopting,* 2010 WL 3033821 (N.D.N.Y. Jan. 13, 2010) (Homer, M. J.), and the fact that approximately a year and a half had passed since the issuance of that decision (warranting a certain discount of that amount). (Dkt. No. 31, at 3–5.) However, the Court reserved decision on the issue of restitution, in order to (1) give the Government an opportunity to consult with Amy, to see whether that amount was acceptable to her or whether the Government wanted a further opportunity to submit evidence, and (2) await guidance from the Second Circuit in the case of *U.S. v. Aumais,* 656 F.3d 147 (2d Cir.2011), an appeal from *U.S. v. Aumais,* 08–CR–0711, 2010 WL 3034730 (N.D.N.Y. Aug. 3, 2010). (Dkt. No. 31, at 3–8.) As a result, the Court indicated that it would decide the issue within 90 days. (*Id.* at 9, 24.)

On August 12, 2011, the Government reported to the Court that Amy was satisfied with the Court's proposed restitution amount of $37,126.50, and thus was not requesting a hearing. (Dkt. No. 32.) However, on August 15, 2011, Defendant objected to the Court's proposed restitution amount of $37,126.50, and repeated his request for an evidentiary hearing. (Dkt. No. 33.) On September 8, 2011, the Second Circuit issued its decision in *U.S. v. Aumais,* 656 F.3d 147 (2d Cir.2011). That same day, the Court extended the deadline for its decision until December 14, 2011, in light of the intervening change in controlling law created by *U.S. v. Aumais,* 656

---

1. "Amy" is the pseudonym of one of the individuals depicted in the materials possessed by Defendant; this pseudonym is used in order to protect the true identity of the victim, a minor child. N.D.N.Y. L.R. Cr. P. 1.3 (requiring protection of the identities of the true names of minor children); *see also U.S. v. Pearson,* 570 F.3d 480, 482 (2d Cir.2009) (referring to minor female victims of child pornography crime as "Jane Doe # 1" and "Jane Doe # 2").

F.3d 147 (2d Cir.2011). (Text Order filed Sept. 8, 2011.)

As stated earlier, this is the Court's decision.

Because this Decision and Order is intended primarily for the review of the parties (who have demonstrated an adequate understanding of the issues raised by the Government's request), the Court need not, and will not, recite in detail the parties' arguments on the Government's request. (*See generally* Dkt. No. 22 [Government's Memo. of Law and Exhibits]; Dkt. Nos. 23–25 [Def.'s Memo. of Law and Exhibit]; Dkt. No. 33 [Def.'s Suppl. Letter Brief].)

Rather, the Court will note only that, at their core, the parties' briefs raise the following five issues: (1) under the circumstances, must the Court hold an evidentiary hearing before deciding the Government's request for restitution; (2) was Amy a "victim" of Defendant's crime within the meaning of 18 U.S.C. § 2259; (3) does 18 U.S.C. § 2259 limit the losses that Amy may recover pursuant to 18 U.S.C. § 2259(b)(3)(A)-(E) to those *proximately* caused by Defendant's commission of the crime in question (or does it permit some other sort of causation, such as factual causation); (4) applying the correct standard of causation, what amount of Amy's losses were caused by Defendant's commission of the crime in question; and (5) is it permissible, and appropriate, under 18 U.S.C. § 2259, for the Court to hold Defendant jointly and severally liable for payment of the full amount of restitution (rather than apportioning liability among the individuals to reflect the level of contribution to Amy's loss and economic circumstances of each individual)?

The Government bears the burden of proof on each of these five issues by a preponderance of the evidence. 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government.").

**B. Governing Statute**

Section 2259 of Title 18 of the United States Code defines the individual harmed "as a result" of a defendant's crime committed under Chapter 110 of the United States Code as the crime's "victim." 18 U.S.C. § 2259(c). Section 2259 further mandates that the Court issue an Order directing the defendant to pay that victim restitution equaling "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). Section 2259 defines "the full amount of the victim's losses" as "any costs incurred by the victim" for the following:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3).

## II. ANALYSIS

**A. Whether the Court Must Hold an Evidentiary Hearing Before Deciding the Government's Request for Restitution, Under the Circumstances**

■ After carefully considering the issue, the Court finds that, under the circumstances, an evidentiary hearing is not necessary before restitution may be or-

dered. The Court makes this finding for the two reasons stated by the Court in its recent decision of *U.S. v. Hagerman,* 827 F.Supp.2d 102, 107–10, 10–CV–0462, 2011 WL 6096505, at *3–5 (N.D.N.Y. Nov. 30, 2011) (Suddaby, J.). The Court would add only that, under the circumstances of this case, Amy's losses were ascertainable at least ten days before the sentencing, and copies of the documents supporting the victim's losses were provided to Defendant within the required time frame. (*See, e.g.,* Dkt. No. 21 [U.S. Probation Office's Presentence Investigation Report and Exhibits, filed Apr. 28, 2011]; Dkt. Nos. 22, 35 [Government's Memo. of Law and Exhibits].)

### B. Whether Vicky Is a "Victim" of Defendant's Crime, Within the Meaning of 18 U.S.C. § 2259(c)

▆ After carefully considering the issue, the Court finds that Amy was a "victim" of Defendant's crime within the meaning of 18 U.S.C. § 2259(c). This is because Amy was "harmed," under 18 U.S.C. § 2259(c), "as a result of" Defendant's receipt and/or possession of images of her sexual abuse as a minor over the Internet. The Court makes this finding for the reasons stated by the Second Circuit in *U.S. v. Aumais,* 656 F.3d 147, 152 (2d Cir.2011), and for the reason stated by this Court in *U.S. v. Hagerman,* 827 F.Supp.2d 102, 109–11, 10–CV–0462, 2011 WL 6096505, at *5–6 (N.D.N.Y. Nov. 30, 2011) (Suddaby, J.).

The Court would add only that the Government has proved, by a preponderance of the evidence, that (1) Defendant received pornographic images of Amy from the Internet "on or about February 14, 2010" and that he possessed such pornographic images of her "[o]n or about March 5, 2010," and (2) Amy has sustained, and continues to sustain, significant psychological damage as a result of her knowledge that unidentified individuals have downloaded pornographic images of her from the Internet on unidentified occasions, including (but not limited to) occasions between late–2006 or early–2007 (when she first learned of the widespread presence of her images on the Internet) and December 20, 2010 (when a third psychological evaluation of her was conducted by Dr. Joyanna Silberg, Ph.D.). (Dkt. No. 35, at Ex. A [attaching Silberg Reports dated Nov. 21, 2008, Oct. 21, 2010, and Jan. 23, 2011, filed under seal].) [2]

### C. Whether 18 U.S.C. § 2259 Limits the Losses that Vicky May Recover Pursuant to 18 U.S.C. § 2259(b)(3)(A)-(E) to Those *Proximately* Caused by Defendant's Commission of the Crime in Question

After the parties' completed their briefing of this issue on August 18, 2011, the Second Circuit addressed the issue. More specifically, on September 8, 2011, the Second Circuit held, as a matter of first impression, that "under [18 U.S.C.] § 2259, a victim's losses must be proximately caused by the defendant's offense." *U.S. v. Aumais,* 656 F.3d 147, 154 (2d Cir.2011).

Generally, in support of its holding, the Second Circuit offered three reasons: (1) its endorsement of the Eleventh Circuit's reasoning on the issue in *U.S. v. McDan-*

---

**2.** Although page 1 of Dr. Silberg's report of his third psychological evaluation of Amy lists the "Date of Evaluation" as "December 20, *2011,*" the Court construes the actual "Date of Evaluation" as being "December 20, *2010,*" based on the information contained in the report and the fact that the "Date of Report" is listed as "January 23, 2011." (Dkt. No. 35, at Ex. A [attaching Silberg Report dated Jan. 23, 2011, filed under seal] [emphasis added].)

*iel,* 631 F.3d 1204 (11th Cir.2011); (2) its endorsement of the D.C. Circuit's reasoning on the issue in *U.S. v. Monzel,* 641 F.3d 528 (D.C.Cir.2011); and (3) its own conclusion that such a construction is required, or at least indicated, by the fact that 18 U.S.C. § 2259(b)(2) cross-references 18 U.S.C. § 3664 and 18 U.S.C. § 3663A. *Aumais,* 656 F.3d at 152–54.

On November 30, 2011, the undersigned issued a Decision and Order in what is known as the "Vicky" series of child-pornography cases. In that Decision and Order, the undersigned found it appropriate to respectfully identify certain flaws that appear to exist in the Second Circuit's rationale regarding its proximate-causation holding in *Aumais,* in the event the Second Circuit has occasion to revisit the issue. *U.S. v. Hagerman,* 827 F.Supp.2d 102, 111–17, 10–CV–0462, 2011 WL 6096505, at \*7–10 (N.D.N.Y. Nov. 30, 2011) (Suddaby, J.).

For the sake of brevity, the undersigned will not repeat that analysis, but will merely incorporate it by reference, in this Decision and Order. In addition, the undersigned notes that his criticism of the above-described rationale in no way relieves him of his duty to faithfully apply the law as the Second Circuit has pronounced it, which he will now do.

### D. The Amount of Amy's Losses that Were Proximately Caused by Defendant's Commission of the Crime in Question

■ Generally, resolving the issue of whether "proximate causation" exists requires a *policy* determination rather than a purely *factual* determination—whether a defendant's conduct was of such a nature that he or she *should be* held responsible for it. *U.S. v. Hagerman,* 827 F.Supp.2d 102, 116, 10–CV–0462, 2011 WL 6096505, at \*10 (N.D.N.Y. Nov. 30, 2011) (Suddaby, J.) (citations omitted). In making this policy determination, courts have historically taken into consideration such factors as the reasonable foreseeability of the particular injury caused by the conduct (sometimes called the "foreseeability standard") and/or the factual directness of the causal connection between the conduct and the injury, i.e., whether there were other intervening independent causes of the injury (sometimes called the "direct-consequences standard"). *Hagerman,* 827 F.Supp.2d at 118 & n. 18, 2011 WL 6096505, at \*11 & n. 18 (citations omitted). Moreover, recently some courts have replaced the "foreseeability standard" and "direct-consequences standard" with a "risk standard." *Id.* at 118 & n. 19, at \*11 & n. 19 (citations omitted). Pursuant to this standard, an "actor ... [is] held liable only for harm that was among the potential harms—the risks—that made the actor's conduct tortious." *Id.* at 118, at \*11 (citation omitted).

■ The Court need not, and will not, attempt to pick and choose among these three sometimes-conflicting approaches, in this Decision and Order.[3] This is because, under any of the these three approaches, the Court would, and does, after careful consideration, find that Defendant's crime was a *proximate cause* of Amy's losses (described below in Parts III. C.1 to III. C.4. of this Decision and Order). Generally, the Court makes this finding because

---

**3.** The Court notes that, generally, New York State courts employ a standard that essentially uses reasonable foreseeability and direct consequences as factors in determining proximate causation. *Hagerman,* 827 F.Supp.2d at 119 & n. 20, 2011 WL 6096505, at \*11 & n.

20 (citation omitted). The Court notes further that, while the New York standard uses the term "substantial cause" in defining proximate causation, the *Restatement (Third) of Torts* has moved away from using that term. *Id.*

the Government has proven, by a preponderance of the evidence, that (1) Defendant received pornographic images of Amy from the Internet "on or about February 14, 2010" and that he possessed such pornographic images of her "[o]n or about March 5, 2010," and (2) Amy has sustained, and continues to sustain, significant psychological damage as a result of her knowledge that unidentified individuals have downloaded pornographic images of her from the Internet on unidentified occasions, including (but not limited to) occasions between late–2006 or early–2007 (when she first learned of the widespread presence of her images on the Internet) and December 20, 2010 (when a third psychological evaluation of her was conducted by Dr. Silberg). (Dkt. No. 35, at Ex. A [attaching Silberg Reports dated Nov. 21, 2008, Oct. 21, 2010, and Jan. 23, 2011, filed under seal].)

More specifically, the Court finds that it was *reasonably foreseeable* to users of child pornography, like Defendant, that Amy would sustain the losses described below by knowing that unidentified individuals, like Defendant, were downloading

those pornographic images of her from the Internet on unidentified occasions in February and March of 2010.[4] Indeed, the Court notes that Defendant had a prior conviction for child pornography in June of 2000, which gave Defendant even further reason to foresee the injurious nature of his conduct. (Dkt. No. 21, at 10 [U.S. Probation Office's Presentence Investigation Report and Exhibits, filed Apr. 28, 2011].) Moreover, there was a *direct causal connection* between Defendant's downloading pornographic images of Amy from the Internet in February and March of 2010, and the losses described below stemming from her knowledge that unidentified individuals were downloading those pornographic images of her from the Internet on unidentified occasions in February and March of 2010.[5] Finally, the losses described below fall within the *potential harms* that made Defendant's conduct criminal: invading Amy's privacy, and indeed re-traumatizing her, by downloading pornographic images of her from the Internet.[6]

Because the Government has submitted two forensic psychological evaluations

4. *See, e.g., U.S. v. Baxter,* 394 Fed.Appx. 377, 379 (9th Cir.2010) ("The United States met its burden of establishing proximate cause by showing how Vicky's harm was generally foreseeable to casual users of child pornography like [the defendant].").

5. *See, e.g., U.S. v. Brunner,* 08–CR–0016, 2010 WL 148433, at *2 (W.D.N.C. Jan. 12, 2010) ("In receiving and possessing the pornographic images of Vicky and Misty taken while they were children, Defendant participated in an ongoing cycle of abuse and thereby contributed to the victims' mental and emotional trauma.... That the criminal behavior of Defendant in this case caused specific harm to Misty and Vicky is also well-documented by the victim impact statements and psychological reports submitted with the Government's motion for restitution."); *U.S. v. Hicks,* 09–CR–0150, 2009 WL 4110260, at *4 (E.D.Va. Nov. 24, 2009) ("[T]here is ample

evidence that when Hicks sought to receive the pornographic images depicting Vicky's abuse, his actions presented a sufficiently proximate tie to her ongoing injuries to justify an award of restitution under § 2259. Vicky and those closest to her attest, first-hand, to the ongoing trauma she suffers each time the Vicky series is traded and viewed.").

6. *See, e.g., U.S. v. Monzel,* 746 F.Supp.2d 76, 88 (D.D.C.2010) (finding that, under the "harm within the risk" approach adopted in the *Restatement (Third) of Torts* § 29 [2010], "[t]he losses alleged by the Government clearly fall within the scope of this risk: all of the victims' alleged losses arise out of the need for ongoing psychological treatment and their inability to maintain normal, emotionally healthy lives as a result of the knowledge that Monzel and others continue to possess images of their abuse").

(specifically, the Silberg Reports dated Oct. 21, 2010, and Jan. 23, 2011) that were drafted seven to ten months *after* Defendant was arrested for the crimes at issue (on March 5, 2010), the Court does not perceive the Second Circuit's recent holding in *Aumais* to preclude, in any way, a finding of proximate causation, under the circumstances.[7] The Court notes that the Victim Impact Statement that Amy submitted (which discusses the "constant fear," "worr[y]," "shame," "embarrassment," and "humiliat[ion]" she experiences at the idea of unidentified people are viewing pornographic images of her on the Internet) was drafted more than a year before Defendant's arrest (having been drafted at some point between June 2008 to June 2009). (Dkt. No. 35, at Ex. A [attaching Victim Impact Statement of Amy, at 1–3, filed under seal].) However, the express purpose of the two forensic psychological evaluation of Amy, drafted by Dr. Silberg in October of 2010 and January of 2010, was to determine to what extent she was continuing to be psychologically re-victimized due to her knowledge that individuals were exchanging and viewing pornographic photographs of her on the Internet. (Dkt. No. 35, at Ex. A [attaching Silberg Report dated Nov. 21, 2008, at 1, Silberg Report dated Oct. 21, 2010, at 1, 3, 4, and Silberg Report dated Jan. 23, 2011, at 1, 4, filed under seal].)

Granted, some courts that find that no proximate causation has been shown rely on the fact that no evidence exists that the victim knew that the particular defendant in question downloaded a particular image of her on a particular occasion.[8] However, the Court finds such a rationale to be flawed for three reasons: (1) such knowledge is not required for proximate cause to exist where, as here, the injuries claimed by the victim stem, in large part, from the fact that she does not know who is downloading her pornographic images from the Internet;[9] (2) to construe 18 U.S.C.

7. *See Aumais,* 656 F.3d at 154–55 ("Dr. Silberg's evaluation of Amy, upon which the doctor's testimony was based, took place on June 11–12, 2008, July 29, 2008, and November 10, 2008, whereas Aumais was not arrested at the border until November 16, 2008. While Dr. Silberg may describe generally what Amy suffers from knowing that people possess her images, Dr. Silberg cannot speak to the impact on Amy caused by *this defendant* .... This opinion does not categorically foreclose payment of restitution to victims of child pornography from a defendant who possesses their pornographic images.... But where the Victim Impact Statement and the psychological evaluation were drafted before the defendant was even arrested—or might as well have been—we hold as a matter of law that the victim's loss was not proximately caused by a defendant's possession of the victim's image.") [emphasis in original].

8. *See, e.g., U.S. v. Chow,* 760 F.Supp.2d 335, 343 (S.D.N.Y.2010) ("[T]he Government has not alleged that Amy and Vicky were aware of this Defendant's possession before the Government advised them of such."); *U.S. v. Fax-*

*on,* 689 F.Supp.2d 1344, 1357 (S.D.Fla.2010) ("[N]one of the exhibits reference any specific knowledge that either Vicky or Amy have concerning this Defendant and his criminal conduct for which he has been convicted in this case."); *U.S. v. Berk,* 666 F.Supp.2d 182, 191 (D.Me.2009) ("In the documentation supporting the Victims' restitution requests, there is no mention of the impact that learning of Mr. Berk's offense had on either of the Victims.").

9. For example, as Amy explains in her Letter to the Judge, "It is hard to describe what it feels like to know that at any moment, anywhere, someone is looking at pictures of me as a little girl being abused by my uncle and is getting some kind of sick enjoyment from it.... I had to quit a job I had as a waitress because there was a guy who I thought was always staring at me. I couldn't stop thinking, did he recognize me? ... The truth is, I am being exploited and used every day and every night somewhere in the world by someone." (Dkt. No. 35, at Ex. A [attaching Victim Impact Statement of Amy, at 1–3, filed under seal].) The Court notes that, in the analogous context of negligence cases, there

§ 2259 as requiring a victim's knowledge of a particular defendant, in cases against defendants who downloaded child pornography on the Internet, would be to construe the statute as providing for relief that, as a practical matter, is usually extremely difficult to grant, in violation of the principle of statutory construction that statutes shall be presumed to not intend impossible results;[10] and (3) to construe 18 U.S.C. § 2259 as requiring the Government to show such knowledge possessed by victims would, as a practical matter, violate the spirit, if not the letter, of 18 U.S.C. § 3664 (which prohibits victims from having to participate in any phase of the restitution order),[11] by requiring them to take affirmative action such as (a) signing an affidavit, or appear in court, to testify to such knowledge, (b) answering questions during psychotherapy designed to demonstrate such knowledge, and/or (c) agreeing to personally accept a direct notification of such information from the National Center for Missing and Exploited Children, the United States Department of Justice's Victim Notification System, United States Attorney's Office and/or United States Probation Office.

With regard to this third reason, the Court notes that, while she experienced some problems with alcohol and school in her teenage years, it was primarily the fact that she received legal notifications of the widespread presence of pornographic images of her on the Internet in late–2006 or early–2007, that caused her to regress from the semblance of normality she had achieved in 1999. (Dkt. No. 35, at Ex. A [attaching Silberg Report dated Nov. 21, 2008, at 2–3, filed under seal].) As Dr. Silberg has reported, "each discovery of another defendant that has traded her image re-traumatizes her again." (*Id.* at 3.) Simply stated, requiring the affirmative actions described in the foregoing paragraph before allowing a victim appropriate restitution would have the counterproductive effect of increasing the victim's losses in order to enable her to recover some of those losses. More importantly, it would have the unacceptable effect of furthering the very victimization that the statute intends to prevent.

In addition, the above-referenced cases (requiring that the victim knew that the particular defendant in question downloaded a particular image of her on a particular occasion) are distinguishable from this case, in which Defendant has expressly admitted that he caused harm to Amy:

> My big secrets ... [For 40 years] I carried around being abused & looking at pictures. I really did realize what my actions have done. There [sic] all grown now, or I thought! But reading the wittnes [sic] impack [sic] [statement], I cryed [sic] ... I realised [sic] I made them my victoms [sic] by my actions, that they relive it 24/7, when people look at it. I have caused a lot of hurt & hurt to them. ... I did it on my own free

has long been a trend of easing a plaintiff's burden regarding showing proximate causation, where two defendants are both clearly at fault but the plaintiff does not (and realistically cannot) know which one's negligence caused her injury. *Zuchowicz v. U.S.*, 140 F.3d 381, 388, n. 6 (2d Cir.1998).

**10.** *See* 2A N. Singer, *Sutherland on Statutory Construction* § 45.12 (7th ed. 2011) ("It has also been said that the construction of a stat-

ute that is unreasonable, illogical, unjust, unworkable, or inconsistent with common sense should be avoided."); *see, e.g., Hughey v. JMS Development Corp.*, 78 F.3d 1523, 1529 (11th Cir.1996) ("Congress is presumed not to have intended ... impossible ... results.").

**11.** *See* 18 U.S.C. § 3664(g)(1) ("No victim shall be required to participate in any phase of a restitution order.").

will.... I [have] ruined ... the lives of my victoms [sic]....

(Dkt. No. 24, at Ex. A [attaching letter from Defendant, received Apr. 13, 2011, filed under seal].)

In any event, even if such knowledge were required, the Court finds that it exists in this case. It appears from the record that the Government has, during the time in question, fulfilled its statutory requirement to use its "best efforts" to notify Amy of the current proceeding so as to protect her rights under the statute. 18 U.S.C. § 3771(c)(1). As an apparent result of these efforts, between the dates on which Defendant was arrested for, and pleaded guilty, to the crimes giving rise to this action (i.e., between March 5, 2010, and December 22, 2010), Amy's representative twice referred her for re-evaluations by Dr. Silberg to determine to what extent she was continuing to be psychologically re-victimized due to her knowledge that individuals were exchanging and viewing pornographic photographs of her on the Internet (i.e., on or before August 17, 2010, and December 20, 2010). (Dkt. No. 35, at Ex. A [attaching Silberg Report dated Nov. 21, 2008, at 1, Silberg Report dated Oct. 21, 2010, at 1, and Silberg Report dated Jan. 23, 2011, at 1, filed under seal].)

In addition, he made a request for restitution from Defendant, at the very latest, by April 14, 2011 (i.e., the date of his letter to the Victim Witness Specialist at U.S. Attorney's Office for the Northern District of New York). (Dkt. No. 35, at Ex. A [attaching Letter from James R. Marsh, Esq., dated Apr. 14, 2011, filed under seal]; see also Dkt. No. 21, at 6 [U.S. Probation Office's Presentence Investigation Report and Exhibits, filed Apr. 28, 2011].)

■ Other courts that find that no proximate causation has been shown rely on the fact that the Government did not *precisely quantify* the amount of harm Defendant caused separate and apart from the harm caused by (a) the other individuals who downloaded her images on the Internet, and (b) individuals involved in producing the images.[12] However, the Court finds this rationale to be flawed for four reasons: (1) there is no need to consider the amount of harm caused by individuals involved in producing the images where, as here, the Court finds that the Government has proved, by a preponderance of the evidence, that *all* of the losses under consideration were due to the victim's revictimization, caused by all of the individuals downloading pornographic images of her from the Internet;[13] (2) in any event,

---

**12.** *See, e.g., U.S. v. Chow,* 760 F.Supp.2d 335, 343 (S.D.N.Y.2010) ("[T]he Government has not quantified the amount of damage caused by each act of Defendant's possession of the materials."); *U.S. v. Scheidt,* 07–CR–0293, 2010 WL 144837, at *4 (E.D.Cal. Jan. 11, 2010) (finding that the government did not prove the amount of harm the defendant caused to Amy and Amy separate from the total amount of their harm); *U.S. v. Van Brackle,* 08–CR–0042, 2009 WL 4928050, at *5 (N.D.Ga. Dec. 17, 2009) (holding that the court could not reasonably estimate what portion of Amy's and Vicky's harm was proximately caused by the defendant's receipt of their images, "as opposed to the initial abuse or unknown other acts of receipt and distribu-

tion that occurred before and independent of [the] defendant's act").

**13.** The Court notes that, in his first psychological evaluation, Dr. Silberg reported that, due to treatment, Amy was "back to normal" in 1999, but that she regressed by late–2006 or early–2007, primarily due to the fact that she had been notified of the widespread presence of pornographic images of her on the Internet. (Dkt. No. 35, at Ex. A [attaching Silberg Report dated Nov. 21, 2008, at 2–4, filed under seal].) As Dr. Silberg has reported, "[Amy's] initial therapy did help her in coping with her symptoms at the time.... However, ... there has been a resurgence of the trauma with [Amy's] ongoing realization that her image is being traded on the internet." (Dkt.

with regard to the amount of harm caused by Defendant in relation to the harm caused by the other individuals who downloaded her images on the Internet, "mathematical precision" is not required in order to show such causation under 18 U.S.C. § 2259;[14] (3) construing 18 U.S.C. § 2259 as requiring the Government to quantify precisely how much harm a defendant caused the victim, in order to prove that the defendant caused any harm at all to the victim pursuant to 18 U.S.C. § 2259(b)(3)(A)-(E), violates the spirit, if not the letter, of the joint-and-several-liability rule imposed by 18 U.S.C. § 3664(h), discussed below in Part III. E. of this Decision and Order; (4) to construe the statute as requiring such a precise quantification, in cases involving a wide audience of users of child pornography, would be to construe the statute as providing for relief that, as a practical matter, is nearly impossible to grant (especially given 18 U.S.C. § 3664's prohibition against requiring victims to participate in any phase of the restitution order),[15] in violation of the above-described principle of statutory construction.

In any event, even if the amount of harm caused by Defendant must be quantified in order for a finding of proximate causation to be rendered, that harm need only be *reasonably* quantified, and, under the circumstances, the Court reasonably quantifies that harm as eighty-eight one hundredths of one percent (.88%) of all the harm that Amy incurred from individuals viewing pornographic images of her on the Internet. The Court arrives at this calculation based on the fact that, as of the date the Government requested restitution (on June 3, 2011), approximately 113 defendants, including this Defendant, had been successfully prosecuted (and subjected to restitution requests) for unlawfully possessing or receiving the Amy series.[16]

Turning to a discussion of the total recoverable losses caused by all the individuals who downloaded pornographic images of Amy, the Court further finds that these

No. 35, at Ex. A [attaching Silberg Report dated Nov. 21, 2008, at 4, filed under seal].)

**14.** *See U.S. v. Doe*, 488 F.3d 1154, 1159–60 (9th Cir.2007) ("[W]e and the other circuits addressing restitution orders under Section 2259 have not imposed a requirement of causation approaching mathematical precision."); *accord, U.S. v. Monzel*, 641 F.3d 528, 540 (D.C.Cir.2011).

**15.** *See, e.g., U.S. v. Paroline*, 672 F.Supp.2d 781, 793 (E.D.Tex.2009) ("Although [proving the portion of the victim's losses caused by the defendant] may seem like an impossible burden for the Government, the Court is nevertheless bound by the requirements of the statute."); *U.S. v. Chow*, 760 F.Supp.2d 335, 344 (S.D.N.Y.2010) ("Here, the Government has not presented any evidence as to how much of the victims' losses were caused by Defendant's specific acts.... The Court recognizes that under the current formulation of § 2259, the Government might be unlikely to show the causation required to obtain restitution

orders against defendants convicted of possession of widely distributed child pornography....").

**16.** In arriving at this calculation, the Court has relied on its review of the criminal convictions from district courts throughout the country in cases involving "Amy," as reported on Westlaw and LEXIS, and as evident from the Federal Judiciary's Public Access to Court Electronic Records (a/k/a "PACER") Service, and Exhibit C to the Government's Sentencing Memorandum, which indicates the 110 criminal convictions and restitution findings of district courts throughout the country in cases involving "Amy," as of March 30, 2011 (not including the current case). (Dkt. No. 35, at Ex. C [attaching chart, filed under seal].) In so doing, the Court has confirmed the 110 cases listed in Exhibit C, and found two decisions issued between March 30, 2011, and June 3, 2011. *See U.S. v. Reynolds,* 09–CR–0476, 2011 WL 1897781 (E.D.Cal. May 18, 2011); *U.S. v. O'Brien,* 10–CR–0145, 2011 WL 2133707 (D.Me. May 26, 2011).

total recoverable losses amount to $3,381,159.00, itemized below in Parts III. D.1. through III.D.4. of this Decision and Order.

### 1. Future Counseling Expenses

■ The Government requests restitution for future counseling expenses in the amount of $512,681.00, which covers (1) future counseling for the estimated remainder of Amy's life, in the amount of $7,800.00 per year, commencing in 2009, and (2) three institutionalizations throughout various stages of Amy's life, in the amount of $120,000.00, or $1,938.61 per year. (Dkt. No. 35, at Ex. A [attaching Letter from James R. Marsh, Esq., dated Apr. 14, 2011, at 25, filed under seal].) In support of this request, the Government has adduced (1) the Victim Impact Statement of Amy, (2) three evaluations by forensic psychologist Dr. Joyanna Silberg, Ph.D., and (3) a written report of economist Stan V. Smith, Ph.D. (Dkt. No. 35, at Ex. A [attaching Victim Impact Statement of Amy from late–2008 or early–2009, Silberg Reports dated Nov. 21, 2008, Oct. 21, 2010, and Jan. 23, 2011, and Smith Report dated Sept. 15, 2008, filed under seal].) For the sake of brevity, the Court will not recite in detail in this Decision and Order (which is intended primarily for the review of the parties) the factual findings and conclusions rendered in those documents. Instead, the Court will note only a few aspects of those documents.

Amy's Victim Impact Statement from late–2008 or early–2009 states, *inter alia,* that she is "still discovering all the ways that the ... exploitation [from the presence of pornographic images of her the Internet] has hurt [her], [and] set [her] life on the wrong course...." (*Id.*) Dr. Silberg's report of November 21, 2008, states, *inter alia,* that Amy "face[s] a lifetime of victimization because the pornography can be distributed indefinitely[,]" displays

symptoms "particularly resistant to standard treatment for post-traumatic stress and the effects of sexual abuse[,]" "will continue to struggle with the enduring effects of these traumatic experiences ... over her lifetime," and "will require weekly therapy ... and ... likely ... periods [of] ... more intensive inpatient or rehabilitation services ... over the course of her lifetime." (*Id.*) Dr. Silberg's report of October 21, 2010, states, *inter alia,* that her above-described conclusions remain unchanged, that some of Amy's conditions had worsened, and that she was "concerned that the treatment program that Amy requires at this point involves more structure and supervision than is available in an outpatient program." (*Id.*) Dr. Silberg's report of January 23, 2011, states, *inter alia,* that her above-described conclusions remain unchanged, and recommends that "[a] comprehensive and structured treatment program ... be instituted to help reverse [Amy's troublesome] patterns that have become well-established." (*Id.*) Finally, Dr. Smith's report of September 15, 2008, attaches a table (i.e., "Table 7") that details the present value of Amy's future treatment and counseling costs. (*Id.*)

The Court notes that, during the more than seven months that has elapsed since Amy notified Defendant that she was requesting restitution in this action (and provided her expert reports supporting that request), Defendant has adduced no evidence controverting Amy's expert reports. (*See generally* Dkt. Nos. 21, 23, 24, 30, 33.)

Under the circumstances, the Court finds that the Government has established, by a preponderance of the evidence, that the request for future counseling expenses in the amount of $512,681.00 is reasonable.

### 2. Lost Wages and Benefits

■ The Government requests restitution for lost wages and benefits in the

amount of $2,855,173.00. (Dkt. No. 35, at Ex. A [attaching Letter from James R. Marsh, Esq., dated Apr. 14, 2011, at 25, filed under seal].) Again, in support of this request, the Government has adduced (1) the Victim Impact Statement of Amy, (2) three evaluations by forensic psychologist Dr. Joyanna Silberg, Ph.D., and (3) a written report of economist Stan V. Smith, Ph.D. (Dkt. No. 35, at Ex. A [attaching Victim Impact Statement of Amy from late–2008 or early–2009, Silberg Reports dated Nov. 21, 2008, Oct. 21, 2010, and Jan. 23, 2011, and Smith Report dated Sept. 15, 2008, filed under seal].) And, again, the Court will not recite in detail in this Decision and Order but will note only a few aspects of those documents.

Amy's Victim Impact Statement from late–2008 or early–2009 states, *inter alia,* that "I have been trying to get a job, but I just keep avoiding things. . . . I miss interviews or other things that will help me get a job. . . . I had to quit a job I had as a waitress because there was a guy who I thought was always staring at me. I couldn't stop thinking, did he recognize me? Did he see my pictures somewhere? I was simply too uncomfortable to keep working there." (*Id.*)

Dr. Silberg's report of November 21, 2008, states, *inter alia,* that "[d]ifficulty with planning and the presence of disassociation has led to her inability to follow through with . . . vocational plans. Furthermore, Amy has ongoing problems with trust in relationships which has interfered with working with authorities in jobs. . . ." (*Id.*) Dr. Silberg's report of November 21, 2008, states, *inter alia,* that "she would like to . . . get a part time job . . . , but . . . she has not yet been successful in [that] . . . goal[ ]. . . ." (*Id.*) Dr. Silberg's report of January 23, 2011, states, *inter alia,* that Amy is in need of "vocational counseling and guidance to set up a . . . career goal."

(*Id.*) Finally, Dr. Smith's report of September 15, 2008, attaches six tables (i.e., "Tables 1 through 6") that detail the assumptions driving his conclusion regarding Amy's net loss-of-earnings capacity to age 67. (*Id.*)

Again, the Court notes that, during the more than seven months that has elapsed since Amy notified Defendant that she was requesting restitution in this action (and provided her expert reports supporting that request), Defendant has adduced no evidence controverting Amy's expert reports. (*See generally* Dkt. Nos. 21, 23, 24, 30, 33.)

Under the circumstances, the Court finds that the Government has established, by a preponderance of the evidence, that the request for lost wages and benefits in the amount of $2,855,173.00 is reasonable.

### 3. Attorney's Fees and Other Costs

■ The Government requests restitution for attorney's fees in the amount of $3,500.00, and other costs in the amount of $17,063.00. (Dkt. No. 35, at Ex. A [attaching Letter from James R. Marsh, Esq., dated Apr. 14, 2011, at 25, filed under seal].)

With regard to the Government's request for restitution for attorney's fees in the amount of $3,500.00, while the Government has not provided an affidavit or declaration from Amy's representative in support of that request, the Government has submitted a 36–paged, singled-spaced letter-brief from Amy's representative, which recites the law governing the award of restitution under 18 U.S.C. § 2259, and applies that law to the facts of this case. (*See generally* Dkt. No. 35, at Ex. A [attaching Letter from James R. Marsh, Esq., dated Apr. 14, 2011, filed under seal].) The Court finds that $3,500.00 is more than reasonable to compensate Mr. Marsh for the time required to research

and draft that letter, as well as the time required to monitor the arrests of individuals charged with possessing pornographic image of Amy on the Internet, hire and communicate with two experts, and communicate with Amy and/or her parents.

With regard to the Government's request for restitution for other costs in the amount of $17,063.00, the letter from Amy's representative breaks down those costs as follows: (1) $7,200.00 for Dr. Silberg's three evaluations; (2) $6,105.00 for Dr. Smith's evaluation; (3) $3,500.00 for an evaluation by Dr. Sharon W. Cooper of Developmental and Forensic Pediatrics, PA; and (4) $258.00 for "Miscellaneous Expenses, Copying, [and] Records." (Dkt. No. 35, at Ex. A [attaching Letter from James R. Marsh, Esq., dated Apr. 14, 2011, at 25, filed under seal].) Based on a careful review of the lengthy and detailed reports of Dr. Silberg, the Court finds that $7,200.00 is a reasonable fee. (Dkt. No. 35, at Ex. A [attaching Silberg Reports dated Nov. 21, 2008, Oct. 21, 2010, and Jan. 23, 2011, filed under seal].) Similarly, based on a careful review of the lengthy and detailed report of Dr. Smith, the Court finds that $6,105.00 is a reasonable fee. (Dkt. No. 35, at Ex. A [attaching Smith Report dated Sept. 15, 2008, filed under seal].) However, because the Government has not submitted either records from Dr. Cooper or documents documenting the "Miscellaneous Expenses, Copying, [and] Records" incurred, the Court is simply not in a position to make a reasonableness determination of either $3,500.00 for Dr. Cooper's evaluation, or $258.00 for "Miscellaneous Expenses, Copying, [and] Records." As a result, the Government's request with regard to those latter two types of costs is denied.

Again, the Court notes that, during the more than seven months that has elapsed since Amy notified Defendant that she was requesting restitution in this action (and provided her expert reports supporting that request), Defendant has adduced no evidence controverting Amy's expert reports. (*See generally* Dkt. Nos. 21, 23, 24, 30, 33.)

Under the circumstances, the Court finds that the Government has established, by a preponderance of the evidence, that the request for attorney's fees in the amount of $3,500.00 is reasonable, and that the request for other costs in the amount of $13,305.00 is reasonable.

### 4. Total Amount of Recoverable Losses, and Share Caused by Defendant

Adding together the amounts listed above in Parts III.D.1. through III.D.3. of this Decision and Order, the Court calculates the total amount of recoverable losses caused by all the individuals who downloaded pornographic images of Amy to be $3,381,159.00.

Based on Defendant's 1/113 share of these losses described above in Part III.D. of this Decision and Order, the Court finds that Defendant proximately caused $29,754.19 of Amy's total recoverable losses (i.e., .88% of $3,381,159.00).

In the alternative, the Court finds that it is permissible and reasonable to award $150,000.00 in restitution to Amy from Defendant pursuant "Marsha's Law," which permits civil actions by victims of child pornography, and which essentially creates a "presumption" with regard to the minimum amount of damages suffered by a victim. *See U.S. v. Estep,* 378 F.Supp.2d 763, 773, n. 4 (E.D.Ky.2005). More specifically, Marsha's Law provides, in pertinent part as follows:

Any person who, while a minor, was a victim of a violation of section 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether

the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

18 U.S.C. § 2255(a). This provision has been applied in criminal cases of child pornography involving restitution requests.[17]

As yet another alternative ground for the Court's award of restitution, the Court finds that it is permissible and reasonable to award $5,000.00 in restitution to Amy from Defendant as nominal damages pursuant to 18 U.S.C. § 2259.[18]

### E. Whether It Is Permissible, and Appropriate, Under 18 U.S.C. § 2259, for the Court to Hold Defendant Jointly and Severally Liable for Payment of the Full Amount of Restitution

██ As stated above in Part III.D. of this Decision and Order, the Court finds that *all* of the losses were caused by individuals by downloading pornographic images of Amy on the Internet. In doing so, of course, the Court acknowledges that individuals other than Defendant have been convicted of downloading those pornographic images of Amy on the Internet, each contributing to those losses. However, this fact does not preclude a finding that Defendant is liable for the losses caused by other individuals, because 18 U.S.C. § 3664 permits the Court to impose the restitution award jointly and severally. *See* 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.").

The Court acknowledges that, in *Aumais*, the Second Circuit observed that "it would seem that [18 U.S.C. § 3664] does not contemplate apportionment of liability among defendants in different cases, before different judges, in different jurisdic-

---

17. *See, e.g., U.S. v. Baker*, 672 F.Supp.2d 771, 779 (E.D.Tex.2009) (basing award of restitution, in child pornography case, on 18 U.S.C. § 2255[a]); *U.S. v. Reynolds*, 09–CR–0476, 2011 WL 1897781, at *5 (E.D.Cal. May 18, 2011) (basing award of restitution, in child pornography case, on 18 U.S.C. § 2255[a], but declining to award the full amount of $150,000 under the circumstances of the case), *accord, U.S. v. Mather*, 09–CR–0412, 2010 WL 5173029, at *5 (E.D.Cal. Dec. 13, 2010), *U.S. v. Yang*, 09–CR–0168, 2010 WL 2011561, at *5 (E.D.Cal. May 19, 2010), *U.S. v. Scheidt*, 07–CR–0293, 2010 WL 144837, at *5 (E.D.Cal. Jan. 11, 2010), *U.S. v. Ferenci*, 08–CR–0414, 2009 WL 2579102, at *5 (E.D.Cal. Aug. 19, 2009), *U.S. v. Renga*, 08–CR–0270, 2009 WL 2579103, at *5 (E.D.Cal. Aug. 19, 2009), *U.S. v. Monk*, 08–CR–0365, 2009 WL 2567831, at *5 (E.D.Cal. Aug. 18, 2009), *U.S. v. Zane*, 08–CR–0369, 2009 WL 2567832, at *5 (E.D.Cal. Aug. 18, 2009); *cf. In re Amy*, 591 F.3d 792, 797 (5th Cir.2009) (Dennis, J., dissenting) ("[18 U.S.C. § 2255(a) is] a statutory provision[] that could have aided the district court in calculating restitution. Congress, recognizing the difficulty that victims such as petitioner face in showing the amount of their losses, has assigned a conclusive damages award in civil suits brought under the same Act creating the right to mandatory restitution for this offense.").

18. *See U.S. v. Klein*, 829 F.Supp.2d 597, 607–09, 10–CR–0333, 2011 WL 5389358, at *9–11 (S.D.Oh. Nov. 8, 2011) (directing defendant to pay nominal damages to "Amy" in amount of $5,000); *U.S. v. Church*, 701 F.Supp.2d 814, 834–35 (W.D.Va.2010) (directing defendant to pay nominal damages to "Amy" in amount of $100).

tions around the country," because "Section 3664(h) implies that joint and several liability may be imposed only when a single district judge is dealing with multiple defendants in a single case (or indictment)." *Aumais*, 656 F.3d at 156.

In making this observation, the Second Circuit relied on a decision issued by the D.C. Circuit that cites two circuit court decisions for the point of law that a district judge cannot find a defendant jointly and several liable, under 18 U.S.C. § 3664, for the losses caused by defendants in other cases, before different judges, in different jurisdictions around the country. *See U.S. v. Monzel*, 641 F.3d 528, 539 (D.C.Cir. 2011) (citing *U.S. v. McGlown*, 380 Fed. Appx. 487, 490–91 [6th Cir.2010], and *U.S. v. Channita*, 9 Fed.Appx. 274, 274–75 [4th Cir.2001]).

As an initial matter, even if the two circuit court decisions in question stand for the above-described point of law,[19] neither of them addresses the fact that the express language of 18 U.S.C. § 3664(h) does not say whether the referenced "defendants" *must* be in the same case before the same judge, or whether they may be in different cases before different judges. Indeed, at least four district court cases exist supporting the latter interpretation.[20]

Moreover, while the two circuit court decisions cited by the D.C. Circuit support the former interpretation, that interpretation appears to undermine, if not contradict, the legislative intention of providing restitution as a remedy under 18 U.S.C. § 2259—to *fully* restore victims to their prior state of well being.[21] This is because, as a practical matter, each year that passes, the pool of individuals found to have downloaded Amy's images on the Internet will likely increase.[22] Concomitantly, each new individual's relative share of losses (proximately caused by him) will

---

**19.** While the D.C. Circuit relies on the Fourth Circuit's decision in *U.S. v. Channita*, 9 Fed. Appx. 274, 274–75 (4th Cir.2001), for the above-described point of law, the Court believes a closer reading of *Channita* is appropriate. What the Fourth Circuit appeared to hold in *Channita* was that, because there was only one defendant in that case, that defendant was responsible for the full amount of the victim's loss, under 18 U.S.C. § 3664(h). *Channita*, 9 Fed.Appx. at 274–75. This holding does not appear to logically compel a conclusion that the defendant in question could not have been held jointly and severally liable, under 18 U.S.C. § 3664(h), for the full amount losses caused by other defendants in that case *or in other cases* had there been such defendants.

**20.** In particular, the Court has found two district court cases imposing, under 18 U.S.C. § 3664(h), joint and severable liability on a defendant for the full amount of restitution owed to a victim of child pornography, including the portion of restitution owed to her by other unidentified individuals (who were not a co-defendants in the case). *U.S. v. Hardy*, 707 F.Supp.2d 597, 610–15 (W.D.Pa.

2010); *U.S. v. Staples*, 09–CR–14017, at *4, 2009 WL 2827204 (S.D.Fla. Sept. 2, 2009). Similarly, the Court has found two district court cases in which a district judge has, under 18 U.S.C. § 3664(h), held a defendant jointly and severally liable for $541,370 restitution along with, *inter alia*, two individuals (i.e., Toby Martinez and Manny Aragon) who were defendants in a *different* case that was pending before a *different* judge (i.e., District Judge William P. Johnson). *U.S. v. Schiff*, 07–CR–0252, Judgment, at 5 (D. N.M. filed July 8, 2009) (Conway, J.); *U.S. v. Schultz*, 07–CR–0518, Judgment, at 4 (D.N.M. filed Apr. 30, 2009) (Conway, J.); *see also U.S. v. Martinez*, 610 F.3d 1216, 1223, n. 2 (10th Cir.2010).

**21.** *See, e.g.,* S.Rep. No. 104–179, at 22–23 (1996), *reprinted* in 1996 U.S.C.C.A.N. 924, 933 ("The committee believes that restitution must be considered a part of the criminal sentence, and that justice cannot be considered served until full restitution is made.").

**22.** (Dkt. No. 35, at Ex. C [attaching chart, current as of March 30, 2011, filed under seal].)

likely decrease. What is worse, a certain percentage of those individuals will likely continue to be "judgment proof," lacking sufficient assets to pay restitution to Amy. As a result, Amy will likely never be able to recover all of her $3,381,159.00 in recoverable losses, unless district judges find defendants jointly and several liable, under 18 U.S.C. § 3664, for the losses caused by defendants in other cases, before different judges, in different jurisdictions around the country. As was stated above in Part III.D. of this Decision and Order, 18 U.S.C. § 3664 shall be presumed to not intend an impossible result (i.e., requiring, but preventing, full restitution).[23]

In addition, both circuit court decisions cited by the D.C. Circuit hinge their holding on their interpretation of 18 U.S.C. § 3664(h), without even attempting to reconcile that interpretation with 18 U.S.C. § 3664(m). Section 3664(m) provides that the court may enforce a restitution order "by all other available and reasonable means," arguably including joint and several liability among defendants in other cases, before different judges, in different jurisdictions around the country. 18 U.S.C. § 3664(m)(1)(A)(ii). At least one circuit court has so construed 18 U.S.C. § 3664(m). *See, e.g., In re Amy Unknown*, 636 F.3d 190, 201 (5th Cir.2011) (stating that district court could order joint and several liability for a lone defendant such as Monzel under 18 U.S.C. § 3664[m][1][A], which provides that a district court may "enforce[ ]" a restitution order "by all other available and reasonable means").

For all of these reasons, the Court concludes that 18 U.S.C. § 3664 does, indeed, permit a district judge to find a defendant (appearing in a case before the judge) jointly and several liable for the losses caused by defendants in other cases, be-

fore different judges, in different jurisdictions around the country.

Furthermore, after carefully considering the issue, the Court finds that, under the circumstances, it is entirely fair, reasonable and appropriate to hold Defendant liable for payment of the *full* amount of restitution (rather than to apportion liability among all the individuals in question to reflect the level of contribution to Amy's loss and economic circumstances of each individual). The Court makes this finding for four reasons.

First, as discussed above, given the likely decrease in each new defendant's relative share of responsibility, and the fact that a certain number of those defendants are likely without sufficient funds, it is only through joint and several liability that Amy can be made economically whole, under the circumstances.

Second, any perceived unfairness to Defendant is minimized, or eliminated, by the fact that the Court will qualify its order so that Defendant need pay Amy *only* the amount not already paid by other individuals for the referenced loss. The Court notes that other courts have found a similar qualification sufficient to minimize or eliminate any perceived unfairness to a defendant. *See, e.g., In re Amy Unknown*, 636 F.3d 190, 201 (5th Cir.2011); *U.S. v. Staples*, 09–CR–14017, Transcript of Restitution Hearing, at 7–8 (S.D. Fla. filed Aug. 12, 2009); *U.S. v. Hofman*, 08–CR–0027, Transcript of Sentencing Proceedings, at 14–16 (D. Nev. filed July 30, 2010); *U.S. v. Rosenberg*, 08–CR–0756, Transcript of Sentencing Proceeding, at 15–16 (N.D.N.Y. filed March 30, 2010) (Hurd, J.); *U.S. v. Burgess*, 09–CR–0017, Judgment, at 7 (W.D. N.C. filed Aug. 27, 2010).

---

23. *See, supra,* note 10 of this Decision and Order.

382

Third, "any confusion about who is responsible for ensuring that Amy" does not receive a "double recovery" during the enforcement and/or collection of a judgment against Defendant is minimized, or eliminated, by the fact that the Court hereby directs that the Government, the United States Probation Office, and Amy's representative shall fulfill that duty, which includes the duty to "track[ ] payments that . . . involve defendants in numerous jurisdictions across the country." *Aumais,* 656 F.3d at 156. The Court is confident that Amy's representative and the referenced Governmental officials possess the resources and conscientiousness to "determin[e] what amount [Amy] has received," by "collecting data about hundreds of cases, ascertaining what money has actually been paid, and determining what losses that money was intended to cover." *Id.* Indeed, the Court notes that those individuals have already started doing so. (Dkt. No. 35, at Ex. C [attaching chart, current

as of March 30, 2011, filed under seal].) Again, the Court notes that other courts have so relied on the Government (i.e., to communicate with Defendant, so as not to give the victim a windfall). *See, e.g., U.S. v. Hofman,* 08–CR–0027, Transcript of Sentencing Proceedings, at 15–16 (D. Nev. filed July 30, 2010); *U.S. v. Rosenberg,* 08–CR–0756, Transcript of Sentencing Proceeding, at 15–16 (N.D.N.Y. filed March 30, 2010) (Hurd, J.).

Fourth, any Eighth Amendment concerns are ameliorated by the following facts: (1) the statute in question is properly considered as remedial, not punitive, in nature;[24] (2) in any event, while the imposition of full restitution (pursuant to joint and several liability) may sometimes appear harsh, it is neither (a) *grossly* disproportionate to the very serious crime of receiving and possessing child pornography,[25] nor (b) unusual in the constitutional sense.[26]

**24.** *See U.S. v. Battista,* 575 F.3d 226, 229 (2d Cir.2009) ("The goal of restitution, in the criminal context, is to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury.... In the context of the [Mandatory Victims Restitution Act], we have observed that the statutory focus" is "on the victim's loss and upon making victims whole.") [internal quotation marks and citations omitted]; *U.S. v. Amato,* 540 F.3d 153, 156–57 (2d Cir.2008) ("In the criminal law, victims' rights are generally the focus of restitution provisions, including those contained in the [Mandatory Victims Restitution Act].... Its purpose is primarily to restore the victim to his or her prior state of well-being, and to that end to require federal criminal defendants to pay full restitution to the identifiable victims of their crimes.") [internal quotation marks and citations omitted]; *U.S. v. Boccagna,* 450 F.3d 107, 115 (2d Cir. 2006) ("[T]he purpose of restitution is essentially compensatory: to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury.... Because the [Mandatory Victims Restitution Act] mandates that restitution be ordered to crime victims for the 'full amount' of losses caused

by a defendant's criminal conduct, ... it can fairly be said that the primary and overarching purpose of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.") [internal quotation marks and citations omitted]; *U.S. v. Coriaty,* 300 F.3d 244, 253 (2d Cir.2002) ("[T]he statutory focus [of the Mandatory Victims Restitution Act is] on the victim's loss and upon making victims whole....").

**25.** *See U.S. v. Arledge,* 553 F.3d 881, 899–900 (5th Cir.2008) (rejecting Eighth Amendment challenge to the imposition of full restitution, pursuant to joint-and-several liability, under Mandatory Victims Restitution Act, in context of mail fraud case), *accord, U.S. v. Newsome,* 322 F.3d 328, 330–42 (4th Cir.2003) (theft-of-trees case).

**26.** *See U.S. v. Dubose,* 146 F.3d 1141, 1144–47 (9th Cir.1998) (rejecting Eighth Amendment challenge to the Mandatory Victims Restitution Act, in part because "mandatory penalties may be cruel, but they are not unusual in the constitutional sense").

**ACCORDINGLY,** it is

**ORDERED** that Defendant is jointly and severally liable to Amy for $3,381,159.00 in restitution, pursuant to 18 U.S.C. § 2259, and must pay to Amy however much of this $3,381,159.00 amount that she has not already been paid for future counseling expenses, lost wages and benefits, attorney's fees, and/or costs for the evaluations of Dr. Joyanna Silberg and the report of Dr. Stan V. Smith; and it is further

**ORDERED** that the Government, the United States Probation Office, and Amy's representative shall ensure that Amy does not receive a "double recovery" during the enforcement and/or collection of a judgment against Defendant.